[No. C065730. Third Dist. May 11, 2011.]

SACRAMENTO COUNTY EMPLOYEES' RETIREMENT SYSTEM, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE SACRAMENTO BEE et al., Real Parties in Interest.

Counsel

James G. Line; Nossaman, John Thomas Kennedy and Stephen N. Roberts for Petitioner.

Crowell Moring and Steven P. Rice for San Diego County Employees Retirement Association as Amicus Curiae on behalf of Petitioner.

Mark E. Merin for Sacramento County Retired Employees' Association as Amicus Curiae on behalf of Petitioner.

Arias & Lockwood and Christopher Damian Lockwood for San Bernardino County Employees' Retirement Association as Amicus Curiae on behalf of Petitioner.

Neil C. Baker for Sonoma County Employees' Retirement Association as Amicus Curiae on behalf of Petitioner.

Julia Wyne and David Henry Lantzer for Board of Retirement of the Orange County Employees Retirement System as Amicus Curiae on behalf of Petitioner.

Kathleen Bales-Lange, County Counsel, and Barbara Booth Grunwald, Deputy County Counsel, for Tulare County Employees' Retirement Association as Amicus Curiae on behalf of Petitioner.

Robert S. Van Der Volgen, Jr., Michael D. Herrera and Christine Roseland for Board of Retirement of Los Angeles County Employees Retirement Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Ram & Olson and Karl Olson for Real Parties in Interest.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Real Parties in Interest.

Meriem L. Hubbard and Harold E. Johnson for Pacific Legal Foundation and Fullerton Association of Concerned Taxpayers as Amici Curiae on behalf of Real Parties in Interest.

Davis Wright Tremaine, Thomas R. Burke, Duffy Carolan and Jeff Glasser for California Newspaper Publishers Association, Los Angeles Times Communications LLC, The Associated Press, California Newspapers Partnership, The Record, Hearst Corporation, The New York Times Company, The Press-Enterprise, The Bakersfield Californian, Eagle Newspapers, Daily Republic and Capitol Weekly as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**DUARTE, J.**—In this original writ proceeding we discuss the California Public Records Act (Public Records Act) and the County Employees Retirement Law of 1937 (Retirement Law). (Gov. Code, §§ 6251 et seq., 31450 et seq.)[1]

The Public Records Act generally requires public agencies to disclose public records, subject to exemptions. (See *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328–329 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*International Federation*).) Part of the Retirement Law provides: "Sworn statements and individual records of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter or upon order of a court of competent jurisdiction, or upon written authorization by the member." (§ 31532.)

After much public outcry about government pensions, The Sacramento Bee and the First Amendment Coalition (collectively, the Bee) filed a petition for writ of mandate to compel the Sacramento County Employees' Retirement System (SCERS) to reveal the pension benefits of named retirees. The trial court concluded the amounts of pension benefits were not part of the "individual records of members" (§ 31532) and ordered SCERS to disclose the requested information.

---

[1] Further unspecified section references are to the Government Code.

SCERS promptly petitioned this court for a writ of mandate to overturn the disclosure order. (See § 6259, subd. (c).) We stayed that order, and issued an order to show cause. For the reasons detailed below, we shall deny the writ petition.

■ The California Supreme Court has held that the public has a general right to know the names and salaries of public officials and employees under the Public Records Act. (See *International Federation, supra*, 42 Cal.4th at pp. 328–340.) The Attorney General, in an opinion cited with approval by the California Supreme Court, has reached a similar conclusion regarding the Retirement Law, finding that the phrase "individual records of members" protected by section 31532 does *not* embrace the pension amounts of named county retirees. (*County Payroll Records as Public Records—Confidentiality of Documents of Hearing on Claimed Disability*, 60 Ops.Cal.Atty.Gen. 110 (1977) (*County Payroll Records*); see *International Federation, supra*, 42 Cal.4th at p. 331; *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 296 [64 Cal.Rptr.3d 661, 165 P.3d 462] (*POST*).)

In this case, we first reject SCERS's claim that a prior suit collaterally estops the Bee from relitigating the scope of section 31532. As we will explain, the law has materially changed since that litigation concluded, and in any event the public interest exception to collateral estoppel applies in this case.

Next, addressing the merits, because exemptions from the general rule of disclosure are construed narrowly, we conclude that pension amounts are not part of the "individual records of members" protected by section 31532. Based on the legislative history of section 31532 and analogous retirement board statutes, we construe that phrase narrowly to mean data filed with SCERS *by* a member or on a member's behalf, not broadly to encompass all data held by SCERS that *pertains to* a member. We also conclude that SCERS has not shown the privacy interest served by nondisclosure "clearly outweighs the public interest served by disclosure." (§ 6255, subd. (a).) Nor, for reasons we shall explain, is there cause to remand to the trial court for a hearing on whether each individual's pension benefits should be kept confidential, as suggested by some amici curiae.

Therefore, SCERS must disclose names and corresponding pension benefit amounts of its members. This does *not* include the members' home or e-mail addresses, telephone numbers or Social Security numbers.

Much of the briefing by SCERS and its allied amici curiae argues disclosure is bad policy that will expose its members—many of whom are elderly—to unwelcome attention, obloquy, and financial predation. "However, this court does not legislate. [SCERS's] remedy properly lies 'on the other side of Tenth Street, in the halls of the Legislature.' " (*Williams v. California Physicians' Service* (1999) 72 Cal.App.4th 722, 731 [85 Cal.Rptr.2d 497].)

Because the trial court properly ordered disclosure of the requested records, we deny SCERS's writ petition in this court, and vacate the stay we previously issued.

## BACKGROUND

On April 15, 2010, the Bee filed a petition for writ of mandate under the Public Records Act. (See § 6258.) The Bee contended that on May 6, 2009, it asked SCERS for a list of retirees who received over $100,000 annually, seeking the name of each retiree, the gross amount received, the department from which he or she retired, the last position held, and the date of retirement.

Ten days later, SCERS advised the Bee that it had prepared a list of 221 "retiree amounts" exceeding $8,333 per month "along with the information regarding employing Departments." The list did not include the names, dates of retirement or last employed position of those retirees. SCERS stated it was withholding the latter information under the authority of section 31532. (See § 6253, subd. (c) [agency normally has 10 days to respond to request].)

In the ensuing months, the Bee made further requests, expanded to include all SCERS members, not just those receiving more than $100,000 per year. Although SCERS provided additional details, including the years of service, dates of retirement and some departmental information about its retirees, SCERS refused to provide the "names or personal identifiers" of members.

The Bee submitted declarations from journalists describing rising public interest in public pensions. According to the declarations, the names of members are sought in order to investigate issues such as cashing out of vacation time or working overtime in the last year of employment, either of which can result in so-called "pension spiking," instances of "double dipping," where a person receives a pension and salary, instances of "triple

dipping," where a person receives a pension, salary and unemployment benefits in one year, and other controversial pension practices. The trial court overruled SCERS's objections to these declarations.

The Bee submitted copies of other trial court decisions mandating disclosure of such information,[2] and documents showing that some county retirement boards provide such information. The trial court overruled SCERS's objections to this material, but found it lacked evidentiary or precedential value.

The Bee also provided copies of a prior Sacramento County Superior Court decision, *McClatchy Co. v. County of Sacramento* (Super. Ct. Sac. Co., 2005, No. 04CS01398) (the *McClatchy* case). SCERS did not object to judicial notice of the *McClatchy* case, and sought judicial notice of a memorandum the County of Sacramento had filed in that case.

In opposition to the Bee's request for names, SCERS asserted "the names or personal identifiers" of members were confidential, "constitutionally protected, private financial information." SCERS also asserted the Bee was collaterally estopped from arguing that member names should be disclosed.

SCERS's chief executive officer declared that SCERS "maintains individual records for members, including such personal information as compensation, years of service, age, amount of retirement allowance, addresses, telephone numbers, social security numbers, marital status, and information pertaining to beneficiaries, including spouses and children." SCERS always interpreted section 31532 as requiring it to keep this information confidential. About 70 percent of the money that pays county pensions comes from investment returns, 20 percent comes from public employer contributions and 10 percent comes from member contributions. The average SCERS retiree is over 68, and SCERS provides retirees information on elder abuse. The trial court overruled the Bee's evidentiary objections to this evidence, but stated it disregarded legal conclusions and argument contained therein.

---

[2] For completeness, we note that two similar trial court decisions are under review, in the First and Fourth District Courts of Appeal. (See *Sonoma County Employee's Retirement Assn. v. Superior Court* (A130659); *San Diego County Employees Retirement Assn. v. Superior Court* (D058962).)

At oral argument in the trial court, SCERS conceded public pensions were backed by public money, in the event investment returns declined. In a supplemental declaration filed over the Bee's objection, SCERS attached a Public Records Act request from an individual seeking the names of deceased members with a lump sum due of at least $20,000, and the names of their beneficiaries.[3]

The trial court granted the Bee's writ petition, and ordered SCERS to disclose the records requested by the Bee in a letter dated February 11, 2010, namely, "the pension benefits retirees received from SCERS in calendar year 2009," including the name of each recipient, the date of retirement, the department retired from, last position held, years of service, base allowance, cost of living adjustment, total health allowance and monthly benefit. We will refer to this information collectively as the "individual pension." SCERS promptly filed a petition for writ of mandate in this court and sought a stay, which we granted.

We previously granted SCERS's motion for judicial notice of legislative materials. We now grant the Bee's motion and SCERS's supplemental motion for judicial notice of further legislative materials. But, as we have cautioned before, taking judicial notice of legislative materials does not mean they will be helpful in resolving a given interpretive question. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29–30 [34 Cal.Rptr.3d 520] (*Kaufman*).)

We deny the motion by amicus curiae California Newspaper Publishers Association and allied media for judicial notice of newspaper articles about public pensions, and the Bee's two motions for judicial notice of similar material, as well as purported budget information. The Bee's motions were procedurally improper, because they were buried in footnotes in responses to amicus curiae briefs. (See *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 180, fn. 3 [82 Cal.Rptr.3d 586]; *Canal Ins. Co. v. Tackett* (2004) 117 Cal.App.4th 239, 243 [11 Cal.Rptr.3d 626].) Further, the materials contained in all three of these motions were not before the trial court, and are cumulative to material in the record. Finally, SCERS does not deny that there is now great public interest in public employee pensions.

## DISCUSSION

Because SCERS's collateral estoppel claim—if successful—would obviate the need to reach the merits, we address that claim first. In part I, we

---

[3] The point was to show that some people might request names of members for questionable purposes.

conclude two settled exceptions to collateral estoppel apply. First, the applicable law has materially changed; second, this case raises an issue of public interest regarding the statutory duties of a public agency.

In part II, after outlining the Public Records Act generally, we reach the merits and consider and reject SCERS's contention that section 31523 provides an explicit statutory exemption from disclosure of individual pensions. Based on the history of section 31532 and analogous statutes, we construe section 31532 narrowly to protect data filed with SCERS *by* a member or on a member's behalf, not broadly to encompass all data held by SCERS that *pertains to* a member. We also conclude that SCERS has not shown the privacy interest served by nondisclosure "clearly outweighs the public interest served by disclosure." (§ 6255, subd. (a).) Finally, we explain why individual county retirees are not entitled to notice and a hearing before their individual pensions are disclosed, as suggested by amici curiae.

I

*Collateral Estoppel*

In the *McClatchy* case, The McClatchy Company, doing business as The Sacramento Bee, sued the County of Sacramento (County) under the Public Records Act, seeking disclosure of retiree pension information. The County had access to the information "by virtue of the County's role as the payroll agent for SCERS" and SCERS, although not a party, had represented to the court that it would "collaborate with the County" to provide the information.

At that time (2005), two published cases had found that public employees had a right of privacy in their salary information. (*Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500, 1511–1523 [5 Cal.Rptr.3d 847] (*Priceless*) [upholding preliminary injunction barring release of information]; *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883, 890–892 [3 Cal.Rptr.3d 915] (*Los Angeles*) [peace officer salary part of protected personnel file].) Relying largely on those two cases and section 31532, the trial court ordered the County to disclose some pension information, but not individual pensions. No appellate review of the disclosure order was sought.

SCERS now contends the Bee is collaterally estopped from litigating the scope of section 31532. Collateral estoppel precludes relitigation of issues decided in a prior lawsuit if several requirements are met, including that the party against whom preclusion is sought is "the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) The Bee contends collateral estoppel should not be applied because the First Amendment

Coalition, a party herein, was not a party in the *McClatchy* case, and therefore privity is absent. The Bee also contends there has been a material change in the law since the *McClatchy* case.

Some amici curiae generally allied with SCERS ask us to reach the merits, to avoid further county-by-county litigation. SCERS, too, states in its petition in this court that "the varying interpretations by Superior Courts support the importance of the Court of Appeal taking this case and deciding the issue."

We need not address the question of privity, nor whether SCERS's inconsistent positions result in a forfeiture of the estoppel claim. The trial court correctly overruled the claim.

First, collateral estoppel will not be applied where there has been a material change in the law. (See *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 615–617 [81 Cal.Rptr.2d 708].) In the *McClatchy* case, the trial court was bound to follow then extant precedent, namely, *Priceless, supra,* 112 Cal.App.4th 1500 and *Los Angeles, supra,* 111 Cal.App.4th 883. However, our Supreme Court later concluded the salaries of public employees were *not* confidential, declined to follow *Priceless,* and disapproved of *Los Angeles.* (*International Federation, supra,* 42 Cal.4th at pp. 335–336, 345.) This shows a sufficient material change in the law to preclude collateral estoppel.

Second, as we have said before, collateral estoppel will not be applied "to foreclose the relitigation of an issue of law covering a public agency's ongoing obligation to administer a statute enacted for the public benefit and affecting members of the public not before the court." (*California Optometric Assn. v. Lackner* (1976) 60 Cal.App.3d 500, 505 [131 Cal.Rptr. 744]; see *People v. Union Pacific Railroad Co.* (2006) 141 Cal.App.4th 1228, 1244–1245 [47 Cal.Rptr.3d 92].)

Whether or not section 31532 bars disclosure of individual pensions is a matter of public interest. Further, applying collateral estoppel ultimately would be futile, because if we concluded the Bee were estopped, any newspaper or even any private citizen could request the same information tomorrow and litigate SCERS's refusal to disclose it. (Accord, *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240] (*Times Mirror*) ["judicial economy and the significance of the questions presented militate in favor of a decision sooner rather than later"].) Moreover, the amici curiae, representing another county retirement board, several associations of county retirees (including SCERS retirees), media, and public interest groups, have great interest in the decision in this case.

Accordingly, because the law has materially changed since the *McClatchy* case was decided, and because this lawsuit tenders an issue of public

importance regarding a county retirement board's duties under the Public Records Act and the Retirement Law, we conclude that collateral estoppel should not be applied.

## II

### *Public Records Act*

■ The Public Records Act was adopted in 1968, replacing "a hodge-podge of statutes and court decisions relating to disclosure of public records." (*Times Mirror, supra,* 53 Cal.3d at p. 1338; see Stats. 1968, ch. 1473, § 39, pp. 2945–2948.) The Legislature, "mindful of the right of individuals to privacy," declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) Most records may be inspected during regular office hours, and copies may be obtained upon payment of costs. (§ 6253, subds. (a), (b).)

■ The Public Records Act has exemptions for some records. Creating a general right of access subject to exemptions places the burden on an agency to show that a particular public record is exempt from disclosure. (See *International Federation, supra,* 42 Cal.4th at p. 329; *County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1319–1321 [89 Cal.Rptr.3d 374].) We must construe statutory exemptions from disclosure narrowly. (*Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1275–1276 [88 Cal.Rptr.3d 847] (*Dixon*); *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 831 [108 Cal.Rptr.2d 870] (*Fresno*).)

In an early case construing the Public Records Act, Associate Justice Leonard M. Friedman, writing for this court, made the following pertinent observation: "Government files hold massive collections which are roughly divisible into public business and private revelations. Statutory and decisional law on public record disclosure reveals two fundamental if somewhat competing societal concerns—prevention of secrecy in government and protection of individual privacy. 'The people's right to know' is a rubric which often accompanies disclosure claims. The 'right to know' demands public exposure of recorded official action. A narrower but important interest is the privacy of individuals whose personal affairs are recorded in government files. Societal concern for privacy focuses on minimum exposure of personal information collected for governmental purposes. The California courts have equated the right of privacy with the right 'to be let alone,' which must be balanced against public interest in the dissemination of information demanded by democratic processes." (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 651–652 [117 Cal.Rptr. 106] (*Black Panther*).)

Justice Friedman also pointed out: "Although personal information which private persons supply to government may not itself reveal official action, it may have sharp relevance to inquiries into official conduct." (*Black Panther, supra*, 42 Cal.App.3d at p. 652.) "The objectives of the Public Records Act thus include preservation of islands of privacy upon the broad seas of enforced disclosure." (*Id.* at p. 653.)

■ At the November 2, 2004 General Election, the People adopted Proposition 59, a legislative constitutional amendment that "enshrined" the right of access to public records in the California Constitution. (*POST, supra*, 42 Cal.4th at p. 288; *International Federation, supra*, 42 Cal.4th at p. 329; see Cal. Const., art. I, § 3, subd. (b).) Although Proposition 59 continued the presumptive right of access to public records and the rule that exemptions should be "narrowly construed," by its own terms it does not "affect[] the construction of any statute" protecting the right to privacy provided by article I, section 1 of the California Constitution, and "does not repeal or nullify, expressly or by implication" any existing "constitutional or statutory exception to the right of access to public records." (Cal. Const., art. I, § 3, subd. (b)(1), (2), (3) & (5).)

SCERS concedes the individual pensions are public records. We agree. (See § 6252, subd. (e) ["any writing containing information relating to the conduct of the public's business"].) SCERS therefore bears the burden to show that an exemption from the general rule of disclosure applies. (*International Federation, supra*, 42 Cal.4th at p. 329.)

In part IIA. and B., we consider SCERS's candidate exemptions in turn, applying the following standard of review: "Factual findings made by the trial court will be upheld if based on substantial evidence. But the interpretation of the Public Records Act, and its application to undisputed facts, present questions of law that are subject to de novo appellate review." (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750 [49 Cal.Rptr.3d 519].) In part IIC., we reject the contention that each member is entitled to notice and a hearing before the member's individual pension information may be released.

A. *Scope of Section 31532 Exemption*

■ The Public Records Act provides that various records need not be disclosed, including "Records, the disclosure of which is exempted or prohibited pursuant to federal or state law." (§ 6254, subd. (k).) SCERS correctly contends this incorporates the confidentiality rule provided by section 31532, but the parties dispute the scope of that confidentiality rule. The trial court did not provide an interpretation of section 31532, but ruled that the requested individual pension information did not fall within the protected "individual records of members."

Although SCERS argues the "plain meaning" of section 31532 controls, we cannot tell from the statute itself what is or is not meant by "individual records of members." SCERS asserts that the Public Records Act "cross-references" section 31532. This is true, but irrelevant. The Public Records Act lists many confidentiality statutes alphabetically by topic, including section 31532, under the heading "County Employees' Retirement, confidential statements and records." (§ 6276.12.) The list was created to "assist members of the public and state and local agencies in identifying exemptions," and the Legislature cautioned that one must "review the applicable statute to determine the extent to which the statute, in light of the circumstances surrounding the request, exempts public records from disclosure." (§ 6275.) Therefore, the listing of section 31532 in the Public Records Act does not speak to the *scope* of section 31532.

SCERS contends, in essence, that the phrase "individual records of members" refers to all information *about* a member that is held *by* SCERS. The Bee contends, in essence, that the same phrase refers to information *provided by* a member, or by inference on the member's behalf, *to* SCERS.

■ We have said that a "party demonstrates ambiguity by tendering an alternative candidate of meaning, that is, a grammatically plausible reading of the language at issue." (*Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 780 [74 Cal.Rptr.3d 690] (*Niles Freeman*).) Both meanings tendered by the parties are plausible. This is because the phrase "individual records of members" in the abstract does not tell us what is and what is not within the "individual record" of a member in the context of a public pension system. (See *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545] ["A claim of ambiguity cannot always be decided from the face of the statute. It may be latent."].) The phrase could mean all records pertaining to or about an individual, or all records provided by or on behalf of an individual. Therefore, an ambiguity exists, authorizing us to consider extrinsic materials, such as the legislative history of section 31532 and analogous statutes. (See *Niles Freeman, supra,* 161 Cal.App.4th at pp. 780–781.)

Before embarking on what may otherwise seem an unnecessarily intricate exegesis, we explain why we interweave related statutes and Attorney General opinions into our discussion.

In our order to show cause, we directed the parties to address the *timing* of a 1957 amendment to section 31532, after a 1956 Attorney General opinion construing a similar statute. We were mindful of two interpretive rules. First, "When construing a statute, we may presume that the Legislature acts with knowledge of the opinions of the Attorney General which affect the subject

matter of proposed legislation." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 564 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Second, "While not binding on us, the opinions of the Attorney General are entitled to great weight." (*Orange County Employees Assn., Inc. v. County of Orange* (1993) 14 Cal.App.4th 575, 578 [17 Cal.Rptr.2d 695].)

In their responses, as well as at oral argument, the parties discussed apparently conflicting Attorney General opinions issued in 1955, 1956 and 1977. Both sides claim the benefit of longevity of legislative acquiescence and deference to Attorney General interpretations. SCERS claims individual pensions have been confidential since 1957, and denigrates the 1955 and 1977 opinions; the Bee claims they have been subject to disclosure since at least 1977, if not 1955, and purports to harmonize the 1956 Attorney General opinion with the other two.[4]

We are not normally required to parse Attorney General opinions finely, but in this case we shall do so. We find nothing in the extant record that shows the timing of the 1957 amendment to section 31532 was in any way related to the 1956 Attorney General opinion. For reasons detailed *post*, we conclude the 1956 opinion used overly broad language to define the confidentiality of pension records, which appears to have motivated a legislative change to an analogous statute *in 1985*. The 1955 and 1977 Attorney General opinions, recently cited with approval by our Supreme Court, properly state a narrower scope of confidentiality which we ultimately adopt in this case.

We begin at the beginning. From the adoption of the Retirement Law in 1937 to today, county retirement boards have been required to adopt regulations that include a provision "For the filing of a sworn statement" by each member, "showing date of birth, nature and duration of employment with the county, compensation received, and such other information as is required by the board." (§ 31526, subd. (b); see Stats. 1937, ch. 677, § 43.5, p. 1901.) This continued a similar provision in an even earlier retirement law. (See Stats. 1919, ch. 373, § 4, p. 784.)

As enacted in 1949, former section 31532 provided: "Sworn statements of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter." (Stats. 1949, ch. 1228, § 11, p. 2161.) It is not clear what precipitated this statute. We have examined Governor Warren's enrolled bill file and find no revealing information. But the provision clearly referenced the sworn statements required to be filed *by* the member.

---

[4] At oral argument, the Bee appeared to take the position that the 1956 opinion was poorly reasoned and unintentionally overbroad, rather than continuing to attempt to harmonize the three opinions. As we explain *post*, we agree that the 1956 opinion was unintentionally overbroad.

A similar provision pertaining to the California State Teachers' Retirement System (CalSTRS) had been adopted in 1937. CalSTRS members, too, were required to provide information to their retirement board, subject to the following: "Such data as may be filed by any member or beneficiary with the retirement board shall be considered confidential, and no individual records shall be divulged by any official or employee who has access to them. . . ." (Former School Code, § 5.843, added by Stats. 1937, ch. 626, § 4, pp. 1717, 1727–1728.) Similar language was employed when the Education Code was adopted. (Ed. Code, former § 14426, added by Stats. 1943, ch. 71, p. 601; see *State Teachers' Retirement System*, 20 Ops.Cal.Atty.Gen. 76 (1952) [concluding that addresses filed by members were confidential].)

It seems clear the term "individual records" in the CalSTRS statute meant data filed *by* a member or beneficiary. In 1957, Education Code former section 14426 was amended to read: "Data filed by any member or beneficiary with the Retirement Board is confidential. No official or employee who has access to the individual records shall divulge any information concerning such records to any person" with exceptions, and the information was to be used "for the sole purpose of carrying into effect the provisions of this chapter." (Stats. 1957, ch. 2118, § 4, p. 3752.) Similar language continues in existence today. (Ed. Code, § 22306, as amended by Stats. 2007, ch. 323, § 4.)

In 1953, a similar confidentiality provision covering what is now known as CalPERS (California Public Employees' Retirement System) was enacted, as follows: "Data filed by any member or beneficiary with the board is confidential, and no individual record shall be divulged by any official or employee having access to it to any person other than the member to whom the information relates or his authorized representative, the contracting agency by which he is employed, any state department or agency, or the University. Such information shall be used by the board for the sole purpose of carrying into effect the provisions of this part." (Former § 20134, added by Stats. 1953, ch. 1186, § 6, p. 2686.)

The CalPERS statute was later renumbered as section 20230. (Stats. 1995, ch. 379, § 2, pp. 1955, 1989, renumbered by Stats. 1995.) It seems clear that "individual record" in the CalPERS statute meant data filed *by* a member or beneficiary, as with the analogous CalSTRS and Retirement Act statutes.

In 1955, the Attorney General issued an opinion, drafted by Deputy Attorney General Leonard M. Friedman, later an Associate Justice of this court, concluding that names and pensions of retired state employees were open to public inspection. (*State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen. 90 (1955).) This opinion predated the Public Records Act,

and was based on former section 1227, which provided, "The public records and other matters in the office of any officer, except as otherwise provided, are at all times during office hours open to inspection of any citizen of the State." (Stats. 1951, ch. 655, § 23, p. 1851.) The Attorney General reasoned as follows:

"Examples of the information guarded by section 20134 are addresses of members and beneficiaries, statements as to age and disability, names of relatives and dependents, retirement option elections and similar matters. Utilizing such guarded information, the Retirement System calculates the monthly payment due each beneficiary. It then makes up and certifies to the Controller a monthly claim, supported by a roll which bears the names of individual payees and the amounts of individual payments (see Board of Control Rules 622–624, 656). The roll is used by the Controller as the basis for drawing individual warrants in favor of the individual payees. This roll is not 'data filed by any member or beneficiary,' nor is it an 'individual record.' Rather, it is a composite document which is the written act or record of the act of a public officer [citation]. *Thus the roll is outside the limited class of records guarded by section 20134 and within the larger category of public records. In our view, therefore, the names and amounts shown on the roll are open to public inspection. Consequently, the identical information shown in the Controller's warrant records is also open to inspection by citizens of the State.*

"We have reached this conclusion by simple deduction from the express provisions of section 20134. Thus there is no real occasion to explore the legislative intent. We may observe, however, that our conclusion does not negate the Legislature's apparent objective. If section 20134 prevents disclosure of certain information in the office of [CalPERS], but leaves the gate ajar at the Controller's office, it would be self-frustrating. Granting that the statute intends to safeguard certain personal information, nevertheless it is a fact that the name of every public officer and employee, as well as the amount of his salary, is a matter of public record. *Thus the state-paid income of a retired person is no less open to the public gaze than the income of any active state officer or employee.*" (*State Employees' Retirement Act, supra,* 25 Ops.Cal.Atty.Gen. at p. 91, italics added.)

The quoted portion of the 1955 Attorney General opinion concludes the records were not confidential whether held by the Controller or by CalPERS. The first paragraph states "the roll is outside the limited class of records guarded by section 20134" and the "identical information shown in the Controller's warrant records is also open to inspection," and the second paragraph points out that making information confidential in one place, but accessible in another, would be pointless. (*State Employees' Retirement Act, supra,* 25 Ops.Cal.Atty.Gen. at p. 91.)

The next year, the Attorney General, in an opinion construing section 20134, drafted by a different deputy, stated broadly that "Information filed by members of the system *and information pertaining to individual members of the system* is confidential and may not be divulged." (*State Employees' Retirement System*, 27 Ops.Cal.Atty.Gen. 267 (1956), italics added.) CalPERS had asked whether specified information was or was not confidential, including individual monthly contributions of members, accumulated contributions of members, and the "amount and detail of calculation" of the service or disability retirement allowance, and "basic or special death benefit payable to a beneficiary of a member," and records regarding "physical or mental disability" of a member. (*Id.* at pp. 267–268.) The Attorney General concluded that this information "pertain[s] to individual members and [is] kept as part of the individual records of members. Such information is confidential and is not to be given out." (*Id.* at p. 269.)

In part, the Attorney General's 1956 opinion stated:

"Section 20134 does two things, it makes confidential the data filed by a member and then goes on to forbid disclosure of individual records to unauthorized persons. A suggestion has been made that that portion of the section which forbids disclosure of individual records has reference only to data filed by the member, and does not cover information that comes to the system from other sources. Any such view should mean that the name, address, date of birth of the member, and the name of his beneficiary would be kept from public inspection, but that *the amount of his contributions and any reports as to his physical and mental condition* would be available for inspection by anyone who desired to do so. It would seem that the latter class of information even more than the first should enjoy the protection of the statute. If anything is to be kept from public scrutiny it would seem to be the reports concerning the member's mental and physical condition.

"Aside from practical considerations the wording of the section would indicate that all information pertaining to the individual and not simply that which is given by him is to be protected. Section 20134 does not absolutely prohibit the release of information; it provides that the information shall not be divulged to anyone other than the member, his authorized representative, or his employer. Information which is otherwise confidential may then be given to the member. What information is this? It seems hardly necessary to authorize the release to the member of information as to his age, address or beneficiary; the system obtained this from the member himself. What the member would be seeking would be the information coming from other persons. The information which is not to be divulged except to authorized persons does then include the material which is obtained from sources other than the member." (*State Employees' Retirement System, supra,* 27 Ops.Cal.Atty.Gen. at pp. 268–269, italics added.)

The opinion later notes that "[t]he information protected by Government Code section 20134 is data that must eventually come before the board either in connection with a request for retirement, withdrawal of contributions or payment of a death benefit." (*State Employees' Retirement System, supra*, 27 Ops.Cal.Atty.Gen. at p. 269.) This opinion does not perceive a conflict with the 1955 opinion, and, as the two portions quoted above indicate, was motivated to ensure that in addition to information filed *by* members, information *about* members filed by others on their behalf, such as contribution amounts and medical reports, would be protected. However, it was phrased broadly to state that "all information *pertaining to* the individual" was confidential. (*State Employees' Retirement System, supra*, 27 Ops.Cal.Atty.Gen. at pp. 268–269, italics added.)

In 1957, section 31532 was amended to read substantially as it does today, with the changes in italics: "Sworn statements *and individual records* of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter *or upon order of a court of competent jurisdiction*." (Stats. 1957, ch. 1386, § 2, p. 2719, italics added.) We do not perceive the need to address the latter change regarding court orders, although the parties have. We confine ourselves to the former change, adding the words "and individual records" to the statute. (§ 31532.)

What fragmentary legislative materials exist fail to reveal the motivation for this change. A Legislative Counsel report and the Legislative Digest summarize the amendment, but do not explain the reason for it. (See Legis. Counsel, Rep. on Assem. Bill No. 3015 (1957 Reg. Sess.) pp. 1–2; Legis. Counsel's Dig., Assem. Bill No. 3015 (1957 Reg. Sess.) Summary Dig., p. 546.) There is no reference to either of the earlier Attorney General opinions regarding former section 20134. If there were a relationship—other than temporal—between the 1956 opinion and the 1957 amendment, the available records do not demonstrate it.

SCERS points to a document in Governor Knight's enrolled bill file, drafted by the same deputy who authored the 1956 Attorney General opinion. That document states *in full*: "We have examined the above bill and find no substantial legal objection thereto." (Off. of Atty. Gen., Enrolled Bill Rep. on Assem. Bill No. 3015 (1957 Reg. Sess.) prepared for Governor Knight (June 6, 1957) p. 1.) Although we are compelled to accept that an enrolled bill report prepared by the executive branch may shed light on the *Legislature's* intent (see *Kaufman, supra*, 133 Cal.App.4th at pp. 40–42 [disagreeing with rule, but bound by precedent]), this tepid statement of nonopposition does not tie the 1957 amendment to the 1956 Attorney General opinion.

In fact, there were "a number of widely dispersed but related code sections dealing with the meetings and records of various specific State agencies which were enacted in 1957 and subsequent sessions." (*Records of the State Board of Pilot Commissioners*, 53 Ops.Cal.Atty.Gen. 136, 140 (1970); see, e.g., Stats. 1957, chs. 2170–2233, pp. 3848–3872 [addressing records of 50 different agencies].) As stated earlier, in 1957 the Legislature also amended the CalSTRS provision, Education Code former section 14426, referring to "individual records" in a context meaning data filed *by* members. (Stats. 1957, ch. 2118, § 4, p. 3752.) And, as also stated earlier, the CalPERS statute adopted in 1953 used "individual records" in a context meaning data filed *by* members. (Stats. 1953, ch. 1186, § 6, p. 2686.)

Accordingly, although our order to show cause questioned whether the timing of the 1957 amendment adding the phrase "individual records of members" to section 31532 was a response to the 1956 Attorney General opinion, we find nothing to link the two. Further, the 1956 Attorney General opinion itself was primarily concerned with protecting material filed *on behalf of members*, such as medical reports. Indeed, the only published case cited by the parties that mentions section 31532 stands only for the narrow proposition that a medical exam required to be given to a safety member would remain confidential. (*Smith v. Nettleship* (1961) 195 Cal.App.2d 393, 396–397, 401–402 [15 Cal.Rptr. 836].) And, as the Bee points out, the same 1957 bill that amended section 31527 also added a provision for county retirement boards to provide "[f]or the periodic physical examination, at county expense, of safety members." (Stats. 1957, ch. 1386, § 1, p. 2719.) Thus, by adding "individual records" to section 31532 at the same time, the Legislature ensured the reports of such examinations, filed on behalf of members, would be as protected as sworn statements of members.

Given the above, we conclude the Legislature did not add "individual records of members" to section 31532 for the purpose of incorporating the broadly worded 1956 Attorney General opinion construing the analogous CalPERS statute to mean "all information pertaining to the individual." (*State Employees' Retirement System, supra*, 27 Ops.Cal.Atty.Gen. at pp. 268–269.)

However, the history of section 31532 does not end in 1957.

As stated earlier, in 1968, the Public Records Act was enacted.

In 1969, section 31532 was amended to allow a member to authorize disclosure. (Stats. 1969, ch. 239, § 1, pp. 584–585.) According to a legislative document in SCERS's supplemental motion for judicial notice, "It appears, from conversations with proponents, that the present wording of the section . . . may not be considered broad enough to allow a member to find out

what his contributions have amounted to. [¶] The amendment would clarify this, without having to resort to a court order." (Assem. Com. on Public Employment and Retirement, Analysis of Assem. Bill No. 835 (1969 Reg. Sess.) Apr. 16, 1969.) Contrary to SCERS's contention, this does not indicate the prior version of the statute was understood by the Legislature to make all records "pertaining to" an individual confidential. Presumably, contributions are regularly made by the county to SCERS *on behalf of* particular members. This amendment would clarify that the member could obtain this information.

In 1977, the Attorney General interpreted section 31532 and the Public Records Act, and concluded that the pensions paid to county retirees *were not confidential.* (*County Payroll Records, supra,* 60 Ops.Cal.Atty.Gen. 110.) The opinion noted a similarity between section 31532 and former section 20134, stating: "Although the language of these two sections is somewhat different the obvious purpose and intent of both sections are quite similar, that is, to maintain the privacy of retired employees." (60 Ops.Cal.Atty.Gen. at p. 112.) After quoting approvingly from the 1955 Attorney General opinion, the 1977 opinion states:

"Section 31532 provides the authorization for the transmission of the information relating to name and amounts paid of retired persons to the county auditor/controller. It provides for confidentiality of records 'except insofar as may be necessary for the administration of this chapter.' It is obviously necessary for the administration of the chapter for the retirement system to provide the county auditor/controller with the necessary information so that proper payments may be made to retired employees.

"Certainly it cannot be argued that the records in the possession of the county auditor/controller are anything other than public records. § 6250 *et seq.* The only exceptions to those records being public would be found in section 6254 through section 6255. An examination of these sections does not reveal any exemption from the general Public Records Act for records held by the county auditor/controller showing the names and amounts paid to retirees.

"Given the similarity of sections 20134 and 31532, it is therefore our opinion that the records of the county auditor/controller showing the names and amounts paid to retirees are public records and are subject to the inspection of the public or the press." (*County Payroll Records, supra,* 60 Ops.Cal.Atty.Gen. at p. 113.)

In a separate portion of the opinion, addressing records pertaining to disability hearings, the Attorney General mentioned the 1956 Attorney General opinion, stating that "we considered the status of *similar records held*

*by* [*CalPERS*] *under section 20134.* It was our conclusion that such records were confidential. Section 31532 clearly designates such records as confidential and prohibits their disclosure to anyone except as necessary to persons who carry out the functions of the retirement system or as ordered by a proper court. They are thus specifically exempted from the Public Records Act by section 6254 subdivision (k) . . . ." (*County Payroll Records, supra,* 60 Ops.Cal.Atty.Gen. at p. 113, italics added.) In the portion of the opinion we have italicized, the Attorney General clarified that the 1956 Attorney General opinion pertained to records concerning a member's medical and physical condition. This interpretation is in accord with our earlier observation that, notwithstanding broad language used in the 1956 opinion, its intended *application* was narrow.

SCERS perceives significance in the fact that, in 1985, the CalPERS statute, former section 20134, was amended to state that the name and gross pension benefit of a CalPERS retiree is *not* confidential. Apparently, such information was routinely released by the Controller, but not CalPERS, and the amendment required CalPERS to release the information directly. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 808 (1985–1986 Reg. Sess.) May 20, 1985, p. 2; see Stats. 1985, ch. 1508, § 1, p. 5559.) But the 1985 amendment does not show, as SCERS contends, that in its absence the confidentiality of the "individual record" of a CalPERS member precludes the disclosure of pension benefits, nor does it show that the failure to make a similar change in section 31532 has significance. Instead, it shows the Legislature wanted to eliminate lingering confusion resulting from the 1955 Attorney General opinion concluding that such records were not confidential and the 1956 Attorney General opinion which suggested that indeed they were.

We also find it telling that SCERS has not offered any reason the Legislature would have for designating county employee pensions—and no other public pensions—confidential.

We return to the familiar rule that we must construe statutory exemptions narrowly. (*Dixon, supra,* 170 Cal.App.4th at pp. 1275–1276; *Fresno, supra,* 90 Cal.App.4th at p. 831.) By applying that rule, we conclude the term "individual records," as used in section 31532, refers to information provided *by* a member or on the member's behalf (such as medical reports), *to* SCERS, and *not* all records that *pertain to* or *relate to* a member.

In additional support of this view, we note SCERS's maintenance of other records that pertain or relate to a member, but are not provided by a member or on a member's behalf. For example, SCERS must maintain financial records including the "total accumulated contributions of retired

members less the annuity payments made to the members," and must report its "financial transactions" each year in an annual statement. (§§ 31599, subd. (b), 31597; see § 31598.) While this does not mean its annual report must be at the level of detail sought by the Bee, it shows that SCERS maintains *its own* records of transactions, including "payments made to the members." (§ 31599, subd. (b).)

Our conclusion is further bolstered by two California Supreme Court cases interpreting the Public Records Act as it applies to requests for public employee *salary* information.

In *POST, supra,* 42 Cal.4th 278, our Supreme Court considered whether the names, employing departments and employment dates of peace officers were confidential. The relevant statutory language was that personnel records "or information obtained from these records, are confidential" (Pen. Code, § 832.7, subd. (a)), and " '[p]ersonnel records' " was defined as "any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information." (*Id.,* § 832.8.)

*POST* rejected the view that any "information" in "any file maintained under that individual's name" would be confidential, concluding that would lead to "arbitrary and anomalous results." (*POST, supra,* 42 Cal.4th at p. 290.) Under that interpretation, "the circumstance that a document was placed into a file that also contained the type of personal or private information listed in the statute would render the document confidential, regardless of whether the document at issue was of a personal or private nature, and regardless of whether it was related to personnel matters." (*Ibid.*) "We consider it unlikely the Legislature intended to render documents confidential based on their location, rather than their content." (*Id.* at p. 291.)

This bolsters our view that the phrase "individual records of members" does not mean any information *pertaining to* a member. And as the trial court observed, *POST* answers SCERS's contention that the various Attorney General opinions we quoted earlier should be interpreted by parsing which agency (e.g., the Controller, CalPERS, or a county auditor) held particular information. Even if the identity of the information's caretaker previously made a difference, it is a distinction without a difference post-*POST.*

Our Supreme Court also held: "Subdivision (a) of [Penal Code] section 832.8 refers to 'Personal data, including marital status, family members, educational and employment history, home addresses, or similar information.' Each of the items listed, including 'employment history,' is presented as an

example of 'personal data.' The items enumerated in subdivision (a) do not constitute information that arises out of an officer's employment. Rather, they are the types of personal information that commonly are supplied by an employee to his or her employer, either during the application process or upon employment." (*POST, supra*, 42 Cal.4th at p. 294.) "We find no indication that the Legislature, in adopting sections 832.7 and 832.8, was concerned with making confidential the identities of peace officers or the basic fact of their employment. Rather, the legislative concern appears to have been with linking a named officer to the private or sensitive information listed in section 832.8." (*Id.* at p. 295.) "A name might be viewed as 'personal data' in the broadest sense of that phrase, because it relates to a person. 'Personal' generally is defined to mean 'of or relating to a particular person.' [Citations.] The word 'personal,' however, also carries a connotation of 'private,' meaning 'peculiar or proper to private concerns,' 'not public or general' [citation], or '[c]oncerning a particular person and his or her private business, interests, or activities; intimate' [citation]." (*Id.* at p. 296.)

Similarly, "individual" commonly means "of, belonging to, arising from, or possessed by an individual." (Webster's 3d New Internat. Dict. (1971) p. 1152.) Under this view, purely personal information "supplied by" a member (see *POST, supra*, 42 Cal.4th at p. 294) such as a home address or spouse's name would fall within a member's "individual" record, but the records of how much money is given *to* the member *by* the retirement board, and how that amount was calculated (years of service, position held, date of retirement, and so forth) would not.[5]

*POST* also cited with approval the 1955 and 1977 Attorney General opinions we have already described at length: "Without a more specific indication in the statute, we hesitate to conclude that the Legislature intended to classify the identity of a public official whose activities are a matter of serious public concern as 'personal data.' The names of all public employees are viewed as public information under both state and federal law. The Attorney General has long held the position that 'the name of every public officer and employee . . . is a matter of public record.' (*State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen.[, *supra*,] 90, 91 . . . [concluding that state-paid retirement benefits are a matter of public record]; see also *County Payroll Records as Public Records*, 60 Ops.Cal.Atty.Gen.[, *supra*,] 110 . . . [county payroll records of names and amounts received by retirees are public records].)" (*POST, supra*, 42 Cal.4th at p. 296; see *International Federation, supra*, 42 Cal.4th at p. 331 [also citing those two opinions with approval].)

---

[5] At oral argument, SCERS asserted that upholding the disclosure order in this case would open the floodgates to litigation regarding whether each specific item of information about a member would or would not be protected. We disagree. The trial court's order specified the material to be disclosed in this particular case, and the interpretation of "individual records" we adopt should not prove difficult to apply in future cases.

*POST* also made this observation: "Had the Legislature intended to prevent the disclosure of officers' identities as such, an obvious solution would have been to list 'name' as an item of '[p]ersonal data' under subdivision (a) of section 832.8." (*POST, supra*, 42 Cal.4th at p. 298 [listing other statutes that preclude release of names]; see *International Federation, supra*, 42 Cal.4th at p. 343 ["we would expect to see specific language to that effect in the statute"].)

Similarly, if the Legislature wanted to make all records *pertaining to*, *relating to*, or *about* an individual SCERS member confidential, it could have done so. (See, e.g., Ed. Code, § 49061, subd. (b) ["pupil record" includes "any item of information directly related to an identifiable pupil" with exceptions]; 5 U.S.C. § 552a(a)(4) [under federal Privacy Act of 1974 (Pub.L. No. 93-579, 88 Stat. 1896), "record" includes "any item, collection, or grouping of information about an individual"].)

Some statutes containing language specific to other statutory schemes are cited by SCERS to show that *in those statutes*, "the Legislature is referring to a collection or grouping of information about a natural person." (See, e.g., Civ. Code, § 1799, subd. (e) [defining "record" as "any item, collection, or grouping of information about an individual or business entity"]; Ed. Code, § 49558, subd. (a) ["All applications and records concerning any individual" are confidential]; Welf. & Inst. Code, § 4903, subd. (b) ["Individual records that shall be available . . . shall include . . . all of the following information and records related to the investigation . . . ."].) Two of SCERS's examples have a familiar ring: "Information filed with the system by a participant or beneficiary is confidential and shall be used by the system for the sole purpose of carrying into effect the provisions of this part." (Ed. Code, § 26215, subd. (a); see also Fish & G. Code, § 8022, subd. (a) [records filed are confidential and "information contained in the records shall be compiled or published as summaries, so as not to disclose the individual record or business of any person"].) Those definitions do not apply outside their statutory schemes and do not support a broad reading of section 31532. They *do* show that the Legislature could have worded section 31532 more broadly had it so desired.

■ Finally, SCERS contends *its own* interpretation of section 31532, an interpretation shared by some other county retirement boards, is entitled to weight. Although courts will at times grant deference to an agency's interpretation of the statutes it is charged with administering (see *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6–15 [78 Cal.Rptr.2d 1, 960 P.2d 1031]), that deference is not granted in Public Records Act cases. "Whether or not a particular type of record is exempt should not depend upon the peculiar practice of the government entity at issue—otherwise, an agency

could transform public records into private ones simply by refusing to disclose them over a period of time." (*International Federation, supra*, 42 Cal.4th at p. 336.) Moreover, SCERS does not dispute that some county retirement boards interpret section 31532 narrowly, and disclose names and individual pensions.

■ In short, the confidentiality conferred by section 31532 protects information provided *by* a member or on the member's behalf *to* SCERS, not all information held by SCERS that *pertains to* or *relates to* the member. The confidential record does *not* include the name, date of retirement, department retired from, last position held, years of service, base allowance, cost of living adjustment, total health allowance and monthly pension benefit of each retiree. Therefore, the trial court correctly concluded that this information, as requested by the Bee, was not protected from disclosure by section 31532.

### B. *Catchall Exemption*

"We thus come to whether, under section 6255, [SCERS] satisfied [its] burden of demonstrating a public interest in nondisclosure that clearly outweighs the public interest in disclosure on the facts of this particular case. [Citations.] This is a matter on which we exercise de novo review, according the usual deference to any express or implied factual findings of the superior court supported by substantial evidence." (*Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 612 [65 Cal.Rptr.2d 738] (*Connell*); see *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 780 [192 Cal.Rptr. 415] (*San Gabriel*).)

■ Section 6255, subdivision (a) provides that an agency may "justify withholding any record by demonstrating . . . that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." This is commonly known as the "catchall" exception and "entails a balancing of interests, initially by the public agency, then by the reviewing court [citations]. Its [requirement] for a clear overbalance on the side of confidentiality casts the burden of demonstration upon the proponent of confidentiality." (*Black Panther, supra*, 42 Cal.App.3d at p. 657; see *Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071 [44 Cal.Rptr.3d 663, 136 P.3d 194]; *Times Mirror, supra*, 53 Cal.3d at p. 1338.)

SCERS contends (1) the right to financial privacy of its members, (2) the risk to them of public obloquy, (3) the risk to them of financial abuse—including particularly financial elder abuse—and (4) the alternative methods the Bee has of collecting information and reporting on public pension issues, all militate in favor of nondisclosure of individual pensions. We address these four points seriatim.

First, we agree that Californians enjoy a right to privacy in their *private* financial affairs. "A constitutional amendment adopted in 1974 elevated the right of privacy to an 'inalienable right' expressly protected by force of constitutional mandate. (Cal. Const., art. I, § 1.) . . . [W]e may safely assume that the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life." (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) However, *public* pensions are not *private* information.

"Although one does not lose his right to privacy upon accepting public employment, the very fact that he is engaged in the public's business strips him of some anonymity." (*Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 347 [201 Cal.Rptr. 654].) Public salary information "is not private information that happens to be collected in the records of a public entity. Rather, it is information regarding an aspect of government operations, the disclosure of which contributes to the public's understanding and oversight of those operations by allowing interested parties to monitor the expenditure of public funds. The disclosure of such information under the Act does not violate the right of privacy protected by the California Constitution." (*International Federation, supra*, 42 Cal.4th at p. 340.) We believe the same can be said for public pensions.

In *International Federation, supra*, 42 Cal.3d 319, a case mandating disclosure of public salaries, our Supreme Court distinguished an earlier case involving personal financial matters:

"The present case, in contrast, involves disclosure of financial matters directly related to the individual's public employment. Of course, we recognize that many individuals, including public employees, may be uncomfortable with the prospect of others knowing their salary and that many of these individuals would share that information only on a selective basis, even within the workplace. Nor do we question that public disclosure of an individual's salary may cause discomfort or embarrassment. Nonetheless, in light of the strong public policy supporting transparency in government, an individual's expectation of privacy in a salary earned in public employment is significantly less than the privacy expectation regarding income earned in the private sector.

"To the extent some public employees may expect their salaries to remain a private matter, that expectation is not a reasonable one . . . ." (*International Federation, supra*, 42 Cal.4th at p. 331.)

The court also held: "Counterbalancing any cognizable interest that public employees may have in avoiding disclosure of their salaries is the strong

public interest in knowing how the government spends its money. As we have observed in the context of the public's right of access to court proceedings and documents, public access makes it possible for members of the public ' "to expose corruption, incompetence, inefficiency, prejudice, and favoritism." ' " (*International Federation, supra,* 42 Cal.4th at p. 333.) The court explained that the trial court had been given "numerous examples of articles published throughout the state that used information concerning public employee salaries to illustrate claimed nepotism, favoritism, or financial mismanagement in state and local government." (*Id.* at p. 334.) But *two* of the examples cited involved public *pensions.* (*Ibid.*) Thus, the court implicitly concluded that a *public* pension is not *private* financial information.

SCERS emphasizes that a portion of each pension stems from member contributions or investment returns, and the actual amount is derived from many individual factors, such as longevity of service and purchased service credits. But SCERS's chief executive officer declared that most of each pension was public money or investment returns, which would include returns on *public* money, and SCERS conceded in the trial court that the taxpayer must back public pensions in case of investment failure. (See *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 29 [121 Cal.Rptr.3d 151] ["Any shortfall . . . is made up through increases in employer contributions . . . ."]; *Pulitzer Publishing Co. v. Missouri State Employees' Retirement System* (Mo.Ct.App. 1996) 927 S.W.2d 477, 481–483 (*MOSERS*) [retirement board "holds all funds coming into its hands in trust for its members" including member contributions and investment income].)

 Further, a public pension is deferred *public* compensation. (See *In re Marriage of Sonne* (2010) 48 Cal.4th 118, 121, 125 [105 Cal.Rptr.3d 414, 225 P.3d 546]; *Miller v. State of California* (1977) 18 Cal.3d 808, 814 [135 Cal.Rptr. 386, 557 P.2d 970]; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561].)

Accordingly, we reject SCERS's first ground for keeping individual pensions confidential under the catchall exception.

Second, SCERS asserts that publication of individual pensions will harm retirees by exposing them to public hostility, particularly during their "golden years."

In SCERS's laudable zeal to protect its members, SCERS edges in the direction of "unsupportable age-based stereotyping." (*In re T.S.* (2003) 113 Cal.App.4th 1323, 1325–1326 [7 Cal.Rptr.3d 173].) Simply because many retirees are elderly does not mean they are too frail to weather disclosure of their individual pensions.

Further, the perceived storm of publicity SCERS posits seems overblown, or at least misdirected. Most people will understand that if a pension seems too generous, it is likely the responsibility of the public agency granting the pension, not the worker earning it under the prescribed formula. Thus, although some neighbors or others may become envious upon learning of a particular pension, the fact of such pension would not necessarily expose the member to public shame or abuse.

In requiring disclosure of concealed weapons permits, the California Supreme Court rejected a claim of privacy as follows:

"The concern in [*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440 [186 Cal.Rptr. 235, 651 P.2d 822]] was for the harm that might result from the public revelation of the names or associates of individuals listed in an organized crime index. [Citation.] That information was in essence an allegation that the individual was a participant in criminal activity. None of these allegations had been substantiated in a court of law.

"In contrast, the information sought here would not inflict the kind of immediate social stigma that arises from having one's name included on a list of suspected members of organized crime." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 654 [230 Cal.Rptr. 362, 725 P.2d 470] (*Block*).)

In rejecting a contention that disclosure of public salaries would be "an unwarranted invasion of personal privacy" (§ 6254, subd. (c)), *POST* found a legitimate public interest in the data, to expose "potentially inappropriate employment practices, and to conduct followup research" (*POST, supra,* 42 Cal.4th at pp. 299–300). Also, "We do not view the fact of an individual's *public* employment, however, as a *personal* matter. Furthermore, dissemination of information concerning where and when a particular individual has served as a peace officer is not likely to cause 'unjustified embarrassment or indignity.' [Citation.] To the contrary, a peace officer occupies an especially honorable position, one vested with great responsibility, trust, and confidence." (*Id.* at pp. 300–301.)

Similarly, we do not view the fact of an individual's *public* retirement to be a *personal* matter or one likely to generate obloquy. The records will reveal that an individual was a county employee (whose salary amount was public record) and now is a retiree (whose pension amount is public record). SCERS's claim of severe unwelcome attention to retirees in particular is not compelling.

Accordingly, we find SCERS's second ground provides modest support, at best, for keeping the information confidential.

Third, SCERS and allied amici curiae assert release of individual pension amounts will expose members to financial predation. In part they cite various statutes by which the Legislature has increased protections against those who prey on or abuse elderly persons. (See, e.g., Pen. Code, § 368, subds. (d) & (e) [punishment for fraud, embezzlement and identity theft where victim is over 65]; Welf. & Inst. Code, § 15600 et seq. [Elder Abuse and Dependent Adult Civil Protection Act].)

SCERS has not demonstrated that releasing individual pension information will pose serious danger to its members.

Although unrealized threats must be considered in weighing the public interest in nondisclosure, speculative threats must not. (*Connell, supra,* 56 Cal.App.4th at pp. 612–614; see *Block, supra,* 42 Cal.3d at p. 652 ["assertion of possible endangerment does not 'clearly outweigh' the public interest in access"]; *POST, supra,* 42 Cal.4th at pp. 302–303 [no "convincing rationale" for claim that releasing peace officer names—except undercover officers—"would increase the threat to officer safety presented by those with a generalized hostility toward law enforcement officers"]; cf. *Times Mirror, supra,* 53 Cal.3d at pp. 1346–1347 [evidence showed that releasing data on Governor's schedule patterns would pose a plausible security risk].)

Further, in concluding public salaries must be released, our Supreme Court stated: "The interest of employees in avoiding unwanted solicitations or marketing efforts is . . . comparatively weak. The City has not been asked to disclose any contact information for these employees, such as home addresses or telephone numbers." (*International Federation, supra,* 42 Cal.4th at p. 339; see *Fresno, supra,* 90 Cal.App.4th at p. 834 [possibility that releasing financial donor names would cause them to be solicited not grounds to withhold names].)

Many cases limiting identifying information in various contexts involve *home addresses* and *home telephone numbers.* (See, e.g., *County of Los Angeles v. Los Angeles County Employee Relations Com.* (2010) 190 Cal.App.4th 1231 [119 Cal.Rptr.3d 213] [home addresses and telephone numbers of nonunion members]; *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347 [99 Cal.Rptr.2d 627] [home addresses and telephone numbers of abortion clinic workers]; *National Assn. of Retired Federal Employees v. Horner* (D.C. Cir. 1989) 879 F.2d 873 [no public

interest in releasing names *and home addresses* of federal retirees, therefore release would be a "clearly unwarranted invasion of personal privacy" under 5 U.S.C. § 552(b)(6)].) But home and e-mail addresses, telephone numbers, and Social Security numbers are data provided *by* members *to* SCERS and therefore are confidential under section 31532. (Accord, *MOSERS, supra,* 927 S.W.2d at p. 483 [disclosure of individual pensions did not include addresses and telephone numbers, minimizing risk of "exploitation of vulnerable, elderly retirees by unscrupulous elements who might request blanket information for inappropriate purposes"].)

Although it is possible, as some amici curiae posit, that some persons may be able to use other means to link a retiree with a home address or telephone number, that possibility does not materially advance SCERS's claim that releasing individual pensions will endanger retirees.

Accordingly, we find SCERS's third ground provides modest support, at best, for keeping the information confidential.

 Fourth, SCERS contends the Bee has alternative ways to investigate public pensions. This claim is not persuasive. Whether data is disclosable does not turn on who requests it. The Bee has no special right of access to public records, and its motives or needs are irrelevant. (See *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1190–1191 [13 Cal.Rptr.2d 342]; *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 476, fn. 4 [23 Cal.Rptr.2d 412]; *Black Panther Party, supra,* 42 Cal.App.3d at p. 656.) Further, the Bee submitted declarations explaining a need to link pensions to specific people to determine if certain abuses occur. The trial court overruled SCERS's objections to this evidence and SCERS does not challenge that ruling. This is the kind of information our Supreme Court found militated in favor of disclosure of public salaries. (*International Federation, supra,* 42 Cal.4th at p. 334.)

Accordingly, we reject SCERS's fourth ground for keeping individual pensions confidential.

Although SCERS has identified some legitimate interests in nondisclosure, they fall far short of *compelling.* SCERS has not carried its "burden of demonstrating a public interest in nondisclosure that clearly outweighs the public interest in disclosure." (*Connell, supra,* 56 Cal.App.4th at p. 612.) "Since there is a strong public interest in disclosure, the balance must tip in favor of access" to the information. (*Id.* at p. 617.)

## C. *Individual Notice*

Some amici curiae allied with SCERS assert that retirees are entitled to individual notice before their pensions are revealed. SCERS did not raise this

point in the trial court or in this court, although it cites a case touching on this point in its traverse, in connection with its discussion of releases of court-ordered release of records.

■ "Generally courts will only consider issues properly raised by the parties on appeal. [Citations.] However, the Supreme Court has recognized two exceptions to this rule. First, under the theory that an appeal should be affirmed if the judgment is correct on any theory, amicus curiae may raise an issue which will support affirmance. Second, amicus curiae may assert jurisdictional questions which cannot be waived even if not raised by the parties." (*Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177, 1187–1188 [77 Cal.Rptr.2d 289]; see *California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404].) Neither of those exceptions applies here.

It has also been suggested that, by extension of the rule that a *party* can raise a purely legal issue for the first time on appeal, an appellate court may exercise its discretion to permit amicus curiae to raise new issues where the issues touch on public policy and the facts are undisputed. (See *Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 502–503 [129 Cal.Rptr.2d 486].) Assuming we may consider the point absent briefing *by the parties* (cf. § 68081), we find it lacks merit.

SCERS does not contend its members have varying claims to privacy. Nor do the amici curiae describe any reason for protecting a special class of county retirees. They rest their claim to individual notice on the assumption that individual pensions are personal, confidential information. But we have already held to the contrary.

In *International Federation*, our Supreme Court rejected a claim that disclosing public salaries required consideration of each employee's privacy interests, noting that no evidence had been presented justifying such an approach. (*International Federation, supra*, 42 Cal.4th at pp. 336–338.) In contrast, in *POST*, a colorable claim was made that undercover peace officers would face special danger if their information was revealed, and a hearing was ordered to consider that claim. (*POST, supra*, 42 Cal.4th at pp. 301–303.) No similar colorable claim for treating a special class of retirees differently than other retirees has been articulated in this case; therefore no remand for individual notice is required.

## DISPOSITION

The petition for writ of mandate is denied. The stay previously issued by this court is vacated. SCERS shall pay the Bee's "costs and reasonable attorney fees" in an amount to be determined by the trial court. (§ 6259, subd. (d); see *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1344 [64 Cal.Rptr.2d 477]; *San Gabriel, supra,* 143 Cal.App.3d at pp. 781–782.)

Raye, P. J., and Robie, J. concurred.

A petition for a rehearing was denied June 8, 2011.