Filed 6/21/22; Certified for Publication 7/13/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PETER THOMPSON et al.<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CRESTBROOK INSURANCE COMPANY et al.<br><br>    Defendants and Respondents. | A161949<br><br>(Marin County<br>Super. Ct. No. CIV 1904822) |

Peter and Toni Thompson and Henstooth Ranch, LLC (collectively, the Thompsons) appeal a summary judgment in favor of Crestbrook Insurance Company (Crestbrook) and Nationwide Agribusiness Insurance Company (Nationwide) (collectively, the insurers) and Sander, Jacobs, Cassayre & Griffin, Inc. (the agent). The court held that the insurers had no duty to defend the Thompsons in an action involving a parcel they own in Sonoma County. The parcel is subject to a conservation easement (Civ. Code, § 815 et seq.) in favor of Sonoma Land Trust (SLT), which prohibits any impairment of the land's conservation values.

SLT sued the Thompsons in 2015, alleging that they had done work on the parcel that caused damage in violation of the conservation easement. The Thompsons tendered defense of the action to another insurer not a party here, The Burlington Insurance Company (Burlington). Burlington declined the tender on the ground that the SLT action did not arise from an "occurrence,"

1

defined as an "accident." The Thompsons filed a coverage suit removed to federal court which resulted in a judgment upholding the denial of coverage, affirmed by the Ninth Circuit Court of Appeals. (*Henstooth Ranch, LLC v. Burlington Ins. Co.* (N.D. Cal. 2018) 293 F.Supp.3d 1067, aff'd by mem. opn. (9th Cir. 2019) 770 Fed.Appx. 804 (*Burlington*).) While that appeal was pending, the Thompsons tendered defense of the SLT action to Crestbrook and Nationwide, under policies identical in relevant part to the Burlington policy. The insurers declined the tender, the Thompsons filed the present action, and the trial court ultimately upheld the denial of coverage based on the same analysis as the federal court. We shall affirm the judgment, not on the ground adopted by the trial court, but on the ground that the federal court judgment precludes relitigation of whether the SLT action arose from an "accident" within the meaning of the two insurers' policies.

### Factual and Procedural History

In 2009, the parcel's then-owners deeded SLT a conservation easement over the entire parcel to prevent the loss of its scenic, natural-habitat, and open-space values that would occur if the parcel were developed. With narrow exceptions, the easement bars: (1) commercial, industrial, agricultural, or residential use of the parcel; (2) construction of new roads or structures; (3) off-road use of motor vehicles; (4) waste disposal; (5) excavation or alteration of the land; and (6) removal or destruction of trees, except as required for specified purposes. It requires the parcel's owners, before undertaking any restoration activity, to secure SLT's written approval of a vegetation-management plan.

In 2013, the Thompsons acquired the parcel. They also acquired an adjacent parcel, held by a limited liability corporation which they formed, Henstooth Ranch LLC (Henstooth), on which they planned to build a house.

2

In the relevant period, Henstooth held a commercial general liability (CGL) insurance policy from Burlington. The Thompsons held a homeowners' policy from Crestbrook, which covered damages an insured must pay "due to an occurrence," defined to mean "an accident" resulting in "bodily damage, property damage or personal injury." The policy defined "personal injury" to include, among other things, "wrongful entry"—a term not further defined. Henstooth later obtained coverage instead under a Nationwide policy that was similar to the Crestbrook policy, but that defined "personal . . . injury" to include "wrongful entry into . . . a room, dwelling or premises that a person occupies."

In 2014, without consulting SLT, the Thompsons hired contractors to do work on the easement parcel, including relocating a 180-year-old oak tree from the easement parcel to the house parcel. Consequently, in November 2015, SLT filed an action in Sonoma County Superior Court, asserting claims for breach of contract, violation of the conservation easement (Civ. Code, § 815.7) and damage to trees (Civ. Code, § 3346; Code Civ. Proc., § 733).

SLT's complaint against the Thompsons alleged that, in late 2014, SLT learned that the Thompsons "had begun extensive work" on the easement parcel. They were building "a new road to move [a 180-year-old] oak tree" from the easement parcel to the house parcel. SLT staff observed "a newly graded road running nearly the length of the [easement parcel]" from its boundary with the house parcel to the tree. SLT also learned of "a separate incident in which the Thompsons or their contractors" had dredged sediment from a pond on the house parcel and spread it over a portion of the easement parcel. In November 2014, SLT staff observed further grading. Despite the requirements of the easement, the Thompsons had not sought SLT's permission for any of these activities.

3

SLT alleged that its staff attempted to visit the site, but the Thompsons put them off repeatedly. In December 2014, SLT sent the Thompsons a notice "detailing the steps SLT required them to undertake to restore the property," which included hiring a consultant to draft a restoration plan for SLT's review. In spring 2015, the Thompsons instead "unilaterally undertook their own 'restoration' efforts," which not only "failed to remedy [their] past violations" but "caused further harm" to the easement parcel by "fostering growth of non-native species and weeds" and causing "further erosion that reached bedrock" in places. The further harm allegedly was caused by both the Thompsons' "asserted efforts 'to restore' [the parcel]" and their "initial unlawful activities." In a June 2015 site visit, SLT staff observed that the Thompsons had conducted "additional unlawful grading" and had "installed a culvert and a short new road" on the easement parcel.

After that visit and threats of litigation, the Thompsons hired a contractor recommended by SLT to create a restoration plan. The Thompsons gave the plan to SLT for its approval and "agreed not to undertake further unilateral efforts to restore the property." But in November 2015, with the rainy season looming, the Thompsons and SLT reached an impasse over restoration plans. By then, "the original damage done . . . when the Thompsons first graded the road, removed the oak tree, and disposed of dredged materials ha[d] worsened significantly over time due to both erosion of unprotected soils and the Thompsons' own, additional activities." SLT then filed suit and, in December 2015, Henstooth tendered the action to Burlington, which declined to provide a defense.

In August 2016, while the SLT action was pending, the Ninth Circuit published an opinion certifying to the California Supreme Court the following question, "Whether there is an 'occurrence' under an employer's [CGL] policy

4

when an injured third party brings claims against the employer for the negligent hiring, retention, and supervision of the employee who intentionally injured the third party?" (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.* (9th Cir. 2016) 834 F.3d 998, 1000 (*Ledesma* certifying opn.).) The policy at issue in *Ledesma* defined "occurrence" to include an "accident" in terms identical to the policies at issue here. (*Id.* at pp. 1001–1002.) The Supreme Court accepted the certified question in October 2016. (*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co., Inc.*, S236765, Supreme Court Mins., Oct. 19, 2016) [2016 Cal. Lexis 8832].)

A month later, Henstooth sued Burlington, seeking a declaration that the pending SLT action was based on an "occurrence" under its CGL policy, obligating Burlington to provide a defense to the action. Burlington removed the action to federal court. In late 2017, the parties filed cross-motions for summary judgment, which the district court resolved in a January 2018 order finding no duty to defend.

The district court in *Burlington* summarized the relevant law as follows: " 'An accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' [Citation.] 'Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.' [Citation.] 'That does not mean, however, that coverage is always precluded merely because the insured acted intentionally and the victim was injured.' [Citation.] . . . 'Rather, an accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." ' [Citation.] 'However, "where damage is the direct

5

and immediate result of an intended . . . event, there is no accident." ' " (*Burlington, supra,* 293 F.Supp.3d at pp. 1073–1074.)

In rejecting Henstooth's argument that its liability arose in part from negligence, the district court wrote: "In contrast to the acts of tree removal and road access construction, Henstooth characterizes its restoration efforts as negligent, and states that any resulting damage from those efforts 'could not be expected or intended by Henstooth.' " (*Burlington, supra,* 293 F.Supp.3d at p. 1074.) However, the relevant question was not whether Henstooth " 'expected or intended the alleged erosion to occur,' " but "whether the restorative . . . work was intentional." "The underlying complaint alleges that despite a demand from SLT to hire a consultant and to provide SLT with a restoration plan, Henstooth instead took up 'unilateral' restorative efforts that worsened the damage. [Citation.] Thus, Henstooth intended to take up restorative efforts. It is irrelevant that Henstooth did not intend to cause additional harm. '[T]he term "accident" does not apply where an intentional act resulted in unintended harm.' " (*Ibid.*) "There is nothing in the complaint, and Henstooth has not presented any evidence, that 'an aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.' " (*Id.* at p. 1075.)

In January 2018, the Thompsons appealed the *Burlington* judgment to the Ninth Circuit. They retained Gary Gorski to represent them in that appeal and in the impending trial of the underlying SLT action.

On June 4, 2018, Henstooth filed its opening brief to the Ninth Circuit in the *Burlington* appeal and, on the same day, our Supreme Court issued *Liberty Surplus Ins. Corp.* v. *Ledesma & Meyer Constr. Co.* (2018) 5 Cal.5th 216 (*Ledesma*). Henstooth's brief to the Ninth Circuit did not, of course, cite *Ledesma*.

The SLT action was set to proceed to a bench trial in Sonoma County in July 2018. Shortly before the trial date, the Thompsons moved for a continuance based on the fact that a dependency court order had given Gorski sole custody of his child, unexpectedly requiring him to spend five to nine hours each court day commuting between Santa Rosa and his home near Sacramento. The trial court denied the request for a continuance and, from late July through mid-September 2018, conducted a bench trial of the SLT action.

In August 2018, with the SLT trial underway, Burlington filed its respondent's brief to the Ninth Circuit. Gorski did not file a reply on Henstooth's behalf.

In January 2019, in the SLT action, the trial court issued a statement of decision finding that the Thompsons intentionally violated the easement and awarding SLT nearly $600,000 in damages.

In February 2019, the Thompsons, with new counsel, filed a motion in the *Burlington* appeal seeking leave to file a late reply brief or supplemental brief addressing *Ledesma*. The Ninth Circuit denied leave "without prejudice to [Henstooth] filing a citation of supplemental authorities." Pursuant to federal rule, the attorney filed a short letter citing *Ledesma*. (Fed. Rules App. Proc., rule 28(j); 28 U.S.C.) In May 2019, the Ninth Circuit filed a memorandum decision affirming the *Burlington* judgment. (*Henstooth Ranch, LLC v. Burlington Ins. Co.* (9th Cir. 2019) 770 Fed.Appx. 804.) According to the decision, "Henstooth's argument, that 'the damage was unintentional' even if the actions it allegedly took were intentional, is unavailing. As California courts have repeatedly held, 'where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.' *Merced Mutual*

7

*Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50; [citation]. The California Supreme Court's recent decision in [*Ledesma*] is consistent with this rule. [Citation] (reaffirming *Merced*'s holding that there is no accident where an insured 'intended the acts that caused the injury, but not the injury'). Because SLT's suit does not concern accidental conduct under this state-law standard, Burlington had no duty to defend Henstooth from it." (770 Fed.Appx. at pp. 804–805.) Henstooth filed a petition for rehearing based on *Ledesma*, which the court summarily denied in June 2019.

Also in June 2019, Thompson's insurance agent notified Crestbrook and Nationwide of the SLT action.[1] At the time, SLT's posttrial motion seeking nearly $3 million in attorney fees was pending. In July 2019 the Thompsons filed an ultimately unsuccessful appeal from the judgment in the SLT action.[2]

In August and September 2019, respectively, Crestbrook and Nationwide each declined to defend the SLT action. The Thompsons then filed the present action in Marin County Superior Court. The parties stipulated to stay discovery and file cross-motions for summary judgment or summary adjudication of the duty-to-defend issue.

In addressing the summary adjudication motions, the Thompsons, citing *Ledesma*, argued that they were owed a defense because some of the alleged harm to SLT's property could be attributed to their negligent hiring or

---

[1] The Thompsons assert that the initial notice of the SLT action that they gave the agent in 2015 should have prompted it at that time to notify the insurers as well as Burlington, but that it "mistakenly" notified only the latter. However, the Thompsons stipulated below that, if the trial court held that the insurers had no duty to defend them, the agent would nonetheless be entitled to judgment as a matter of law.

[2] Our colleagues in Division Five affirmed the judgment in 2020. (*Sonoma Land Trust v. Thompson* (Dec. 16, 2020, No. A157721) [nonpub. opn.].)

8

supervision of the contractors whose negligent restoration work caused that damage or worsened the initial harm. In the alternative, they contended that the facts could support a claim by SLT for a "wrongful entry" onto the easement parcel committed by the contractors. The Thompsons argued that the *Burlington* judgment had no issue-preclusive effect because Henstooth never asserted coverage based on potential liability for negligent hiring or supervision, because *Ledesma* materially changed the applicable law, and because applying issue preclusion would be unfair in light of Gorski's failure to file a reply brief in the *Burlington* appeal.

The insurers responded that none of the Thompsons' potential liability arose from an "accident." They argued both that the *Burlington* judgment precluded the Thompsons from arguing otherwise and that, as the Ninth Circuit had held in *Burlington*, *Ledesma* does not apply to the SLT action because none of the harmful conduct allegedly directed by the Thompsons was an "accident." The insurers also denied that the SLT action involved any arguable "wrongful entry."

The court issued a tentative ruling granting the insurers' motion based solely on the ground that the alleged damage was caused neither by an "accident" nor by "wrongful entry." The court summarized the Thompsons' theory that "the 'accident' here was the 'negligent hiring or supervision of third parties such as Hess and Lunny' [the contractors] as contemplated and applied in [*Ledesma, supra,*] 5 Cal.5th 216, 222." Distinguishing *Ledesma*, the court held that, given SLT's allegations and the "extrinsic facts discovered during the . . . underlying litigation," the Thompsons' conduct and SLT's allegations "cannot be narrowed to negligent hiring and supervision over the contractors who performed the injurious work. [The Thompsons'] own conduct was alleged and shown to be intentional, . . . not an 'accident.'" The court also

9

held that SLT could not have amended its complaint to state a cause of action for wrongful entry, as entry onto the easement parcel was "not prohibited."

The Thompsons contested the tentative ruling, and the court held a hearing at which the judge asserted that "in this court's view, I have to make an independent determination," reiterating that he "didn't buy any arguments about collateral estoppel, . . . so this court has got to come to its own conclusion." The court noted that the work the employer in *Ledesma* had hired the employee to perform—superintending a construction project, during which he committed sexual misconduct—had been work the employer was entitled to undertake, whereas the Thompsons had been required to get SLT's approval of any restoration efforts, but had hired contractors to undertake such efforts unilaterally. In the court's view, *Ledesma* applies to harm caused by a hiree's negligence or misconduct while doing work the insured was entitled to hire someone to perform, but not to harm caused by a hiree while doing work the insured was not entitled to hire *anyone* to perform. The court subsequently entered an order adopting its tentative ruling.[3] The court entered judgment in favor of the insurers and the agent, and the Thompsons timely filed a notice of appeal.

---

[3] At the hearing, the court had offered a hypothetical: "[I]t's one thing if I hire somebody to cut my own trees, and that contractor does a terrible job and, instead, cuts the neighbor's tree. Then you have potential liability . . . for negligent hiring[.] [¶] This is . . . different because, assuming [the contractors] were negligent, they were doing what their principal had hired them to do." After the entry of summary judgment, the Thompsons moved for reconsideration, stating that they had newly realized that certain facts in the SLT action matched that hypothetical—namely, when their contractor Lunny dredged a pond by the house, Mr. Thompson had said to dump the spoils on part of the *house* parcel, but Lunny had misunderstood and dumped the spoils on part of the *easement* parcel, causing some of the harm SLT alleged. The court denied reconsideration because the assertedly "new" facts already existed when the summary judgment motion was briefed.

## Discussion

We review a summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

### 1. *The Burlington ruling precludes relitigation of whether SLT's claim is based on an "Accident."*

The insurers repeat on appeal their lead argument below, which is that the *Burlington* judgment precludes the Thompsons from relitigating the duty-to-defend issue, since *Burlington* held that identical policy language does not give rise to a duty to defend the SLT action. Because we conclude that this argument is correct, we need not re-evaluate the merits of the decisions reached by both the federal courts and the trial court here.

The doctrine of issue preclusion, formerly known as collateral estoppel, bars relitigation of an issue decided in a prior action if five "threshold requirements are fulfilled." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).) The issue subject to preclusion "must be identical to that decided in a former proceeding" in which it was actually litigated and necessarily decided, by a ruling final and on the merits, to which the party to be precluded was a party (or in privity with one). (*Ibid*.) The Thompsons dispute whether the issue critical to their claim here is identical to the issue decided in *Burlington*. They also contend the doctrine does not apply because "there has been a material change in the law." (*Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 452 (*SCERS*).) Further, they argue that issue preclusion is not an "inflexible" doctrine, so that "[e]ven if the minimal requirements for its application are satisfied," courts may allow relitigation of an issue "if considerations of policy

11

or fairness outweigh the doctrine's purposes as applied in a particular case." (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 97 (*Bostick*).)[4]

Because the relevant facts are undisputed, we review de novo the trial court's determination that issue preclusion does not apply. (*Roos v. Red* (2005) 130 Cal.App.4th 870, 878.)[5] We consider each of the Thompsons' three contentions in turn.

a. *The issue here is identical to the issue in Burlington.*

Relying largely on the issue-preclusion analysis in a recent duty-to-defend case, *Textron Inc.* v. *Travelers Casualty & Surety Co.* (2020) 45 Cal.App.5th 733, the Thompsons contend that whether any of their potential liability to SLT arose from an "accident" differs from issues

---

[4] The Thompsons also note that " 'a particular danger of injustice arises' " if a nonparty to the prior action invokes issue preclusion, so such cases " 'require close examination to determine whether nonmutual use of the doctrine is fair and appropriate.' " (*Bostick*, *supra*, 147 Cal.App.4th at p. 97.) But they identify no reason why the nonmutual invocation of the doctrine here makes its use any less "fair and appropriate" than it would be if raised by Burlington.

[5] In a supplemental brief requested by this court, the Thompsons contend that federal law governs the preclusive effect of the federal judgment. For this proposition, the Thompsons cite *Semtek International Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 507 and this court's opinion in *Guerrero v. Department of Corrections* (2018) 28 Cal.App.5th 1091, 1100. But what *Guerrero* in fact holds, based on *Semtek* and *Taylor v. Sturgell* (2008) 553 U.S. 880, is that federal preclusion law governs the preclusive effect of a federal court's judgment if that court exercised federal-question jurisdiction but, absent extraordinary circumstances, the preclusion law of the relevant state will govern the preclusive effect of a federal court's judgment if that court exercised diversity jurisdiction and applied state law (*Guerrero*, *supra*, at p. 1000), as did the federal court in *Burlington*. Under the California preclusion law that applies here, the "predomina[nt] view" is that "the trial court's application of collateral estoppel is reviewed de novo." (*Roos v. Red*, *supra*, 130 Cal.App.4th at p. 878.) An exception may apply for offensive use of the doctrine (*ibid.*), but that is not at issue here.

considered in *Burlington*. That is so, they argue, because they have asserted a new legal theory based on *Ledesma* and because they rely on certain facts regarding their contractors' actions that they did not raise in *Burlington*. But, as recognized in the decision on which they rely: " '[a]n issue decided in a prior proceeding establishes [issue preclusion] even if some factual matters or legal theories that could have been presented *with respect to that issue* were not presented.' " (*Textron, supra*, at p. 747.)

In *Textron*, the Second Appellate District held that a prior decision regarding which state's law would define the scope of coverage under a certain insurance policy had no preclusive effect in a later coverage dispute over the scope of the same policy because the cases involved wholly different underlying factual allegations. (*Textron, supra*, 45 Cal.App.5th at p. 739.) In 1987, Textron filed a declaratory judgment action in its home state of Rhode Island against numerous insurers, including Travelers, and obtained a judgment declaring that hundreds of policies covering many states and years must all be construed, for coverage purposes, pursuant to Rhode Island law. (*Id.* at p. 738.) Years later, in 2010, a California woman named Esters was diagnosed with mesothelioma and sued Textron. (*Id.* at p. 739.) California applied a "continuous trigger" rule to determine when illnesses "occur," while Rhode Island applied a "manifestation" trigger. (*Id.* at pp. 740–741.) The Second District held that the prior judgment did not preclude litigation of which state's "trigger" rule should apply to determine whether Esters's illness "occurred" during the policy's coverage period, as the issues in the two coverage actions were not identical. " ' "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]" ' [Citation.] . . . '[A]n issue decided in a prior proceeding

13

establishes [issue preclusion] even if some factual matters or legal theories that could have been presented *with respect to that issue* were not presented. [Citations.] A prior decision does not establish [issue preclusion], however, on issues that could have been raised and decided in the prior proceeding but were not. [Citations.]' [Citation.] . . . Putting it as simply as we can, the factual predicate of the legal issue decided in the prior case must be sufficient to frame the identical legal issue in the current case, even if the current case involves other facts or legal theories that were not specifically raised in the prior case." (*Id.* at p. 747.) "Factually, the Esters action involves an alleged occurrence of continuing personal injury . . . suffered by a single California resident from exposure to asbestos in California, caused by Textron's activities in California." (*Id.* at p. 748.) "Obviously, that specific issue—which trigger rule should apply to the Esters action—was not litigated and decided more than 24 years earlier in the Rhode Island action. Thus, the issue presented and decided in [that] action did not present ' " ' "identical factual allegations' " ' " to those [here]." (*Id.* at p. 749.) Although the "ultimate issue" of how to interpret the policy term "occurrence" with regard to personal injury may have been identical, that did not create the sort of "identity of issues" required for issue preclusion. (*Ibid.*)

Here, the present action and the *Burlington* action not only raise the same "ultimate issue"—that is, whether any injuries alleged in the SLT action arose from an "accident"—but do so with regard to "identical factual allegations," namely, the allegations made by SLT in the same complaint concerning the conduct of the Thompsons and their contractors affecting the easement parcel in 2014 and 2015. As the Thompsons note, whether any of their potential liability to SLT arose from an "accident" must be evaluated based not only on the allegations of SLT's complaint but also on facts known

to the insurer and extrinsic to the complaint. (*Montrose Chemical Corp v. Superior Court* (1993) 6 Cal.4th 287, 296.) The coverage issue in each case turned on the same underlying universe of facts regarding the acts of the Thompsons and their contractors affecting the easement parcel.

In *Burlington,* the Thompsons did not articulate their current legal theory, based on *Ledesma,* until the final stages of the appeal. They also did not point to certain specific facts about the contractors' conduct on which they now rely. Their briefs list five "instances of accidental conduct implicated in the SLT action": (1) further erosion caused by the contractors' negligent efforts to remedy the initial harm caused by the roadbuilding and tree removal that the Thompsons hired them to perform; (2) Lunny's negligent use of non-native seeds to re-seed the easement parcel; (3) Lunny's act of dumping pond spoils on that parcel after allegedly misunderstanding Thompson's directions about where to dump them; (4) Lunny's act of constructing, on his own initiative, a second road into the easement parcel to move the pond spoils; and (5) Lunny's decision, on his own initiative, to attempt to re-grade the area where he had dumped the spoils. But while the Thompsons did not articulate a legal theory of "negligent hiring/supervision," they did contend that some harm for which they faced liability to SLT arose from an "accident" because it arose from negligent performance of the remediation work. As the district court noted, "In contrast to the acts of tree removal and road access construction, Henstooth characterizes its restoration efforts as negligent, and states that any resulting damage from those efforts 'could not be expected or intended by Henstooth.' " Also, "Henstooth argued that the restoration efforts were intentional, but that they were executed negligently." While the argument in the federal action did not describe plaintiff's claim as based on "negligent hiring or supervision," the decision that SLT's claim was not an

"accident" was clearly based on the same basic facts, whether or not described as fully as the Thompsons now describe them. "[O]nce an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted might have produced a different outcome." (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490; see also, e.g., *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 401–402.)

> b. *Ledesma did not materially change the law so as to negate the applicability of issue preclusion.*

The Thompsons contend that the 2018 *Ledesma* decision triggers an exception to the issue preclusion doctrine that applies when there has been a material change in the governing law. (*SCERS*, *supra*, 195 Cal.App.4th at p. 452.) But *Ledesma* did not change the law in a respect that is material here. It simply answered what the Ninth Circuit had identified, in an opinion published before the *Burlington* action began, as a significant open question in California insurance law. (*Ledesma* Certifying Opn., *supra*, 834 F.3d at p. 1002.)

The Thompsons cite *SCERS*, *supra*, 195 Cal.App.4th at page 452, in which the Third Appellate District addressed whether a judgment in a prior action which barred publication of information about public employees' salaries precluded relitigation of a similar issue raised in a new case. The prior judgment had no preclusive effect, the court held, because "[i]n the [prior] case, the trial court [had been] bound to follow then-extant precedent" comprising two court of appeal decisions, *Priceless* and *Los Angeles*, but "our Supreme Court later concluded [that] the salaries of public employees were *not* confidential, declined to follow *Priceless,* and disapproved of *Los Angeles.* [Citation] This shows a sufficient material change in the law to preclude [issue preclusion]." (*Ibid.*)

16

Here, by contrast, *Ledesma* did not overrule or disapprove any decision. The Ninth Circuit's published opinion certifying the question in *Ledesma* noted a California Supreme Court opinion alluding to the unsettled nature of the issue, as well as several published federal court orders deciding the issue both ways. (*Ledesma* Certifying Opn., *supra*, 834 F.3d at p. 1002 & fn. 3, citing *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 322, fn. 3.) In answering the question, our Supreme Court did not suggest that any precedent weighed against its conclusion; indeed, it implied that *Minkler* foreshadowed the result. (*Ledesma, supra,* 5 Cal.5th at p. 223 ["In *Minkler* we did not consider whether the [negligent supervision] claims involved were 'accidents' . . . because the issue was not raised. [Citation.] But our reasoning there establishes that [an employer] may be covered even though [its employee]'s intentional acts were beyond the scope of its policy."].)

Thus, when the *Burlington* summary judgment motions were litigated, no precedent precluded the Thompsons from asserting their negligent-supervision theory. The district court in *Burlington* was not bound to rule as it did by any decision that was subsequently overruled in *Ledesma.* Accordingly, no material change in law since the *Burlington* judgment diminishes its preclusive effect.

> c. *There is no unfairness in affording the Burlington judgment preclusive effect.*

The Thompsons contend that the trial court declined to apply issue preclusion based on an exercise of discretion, by which the court implicitly concluded that "considerations of policy or fairness outweigh the doctrine's purposes as applied" here (*Bostick*, *supra*, 147 Cal.App.4th at p. 97). They argue that the court did not abuse its discretion in so deciding. However, the hearing transcript indicates that the court did not reject issue preclusion on discretionary, equitable grounds, but accepted the Thompsons' lead argument

17

below that the doctrine did not apply as a matter of law: "Just to be clear, in this court's view, I *have to* make an independent determination. I didn't buy any arguments about collateral estoppel, or et cetera, so this court has got to come to its own conclusion."

Moreover, there is no basis to conclude that the trial court should have declined on fairness grounds to apply issue preclusion.[6] To evaluate the question, we " 'must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case.' " (*Bostick, supra*, 147 Cal.App.4th at p. 97.) Courts rely on ad hoc fairness concerns to deny effect to an otherwise-applicable preclusion doctrine only in "rare cases" (*Ruddock v. Ohls* (1979) 91 Cal.App.3d 271, 280)—except perhaps in a criminal context (cf. *Lucido, supra,* 51 Cal.3d at p. 343 [stressing need for "realism and rationality" in applying " 'the rule of [issue preclusion] in criminal cases' "]).

The Thompsons contend that this is such a case because circumstances in *Burlington* deprived them of a fair adversary proceeding in which they could fully present their case. The alleged deprivation arose from the personal challenges faced by their then-lawyer, Mr. Gorski, after a dependency court ruling gave him sole custody of his child, which required him to spend many hours each day during the SLT trial driving between Sonoma County and his home near Sacramento. But the Thompsons cite no precedent holding it unfair to bind a party to the results of a prior litigation of an identical issue because the party's attorney in the prior action faced personal difficulties that may have affected his performance. Moreover, the Gorski declaration on

---

[6] Even if the trial court had declined to apply issue preclusion based on ad hoc fairness concerns, we would still review its decision de novo. (See fn. 5, *ante*, citing *Roos v. Red, supra*, 130 Cal.App.4th at p. 878.)

which the Thompsons rely addressed the impact of Gorski's situation only on his ability to represent them in the SLT trial, not in the *Burlington* appeal. And, in all events, the issue the Thompsons contend was not fairly considered in *Burlington*—the impact of the *Ledesma* decision—was presented to the Ninth Circuit by Gorski's successor, and rejected. The case the Thompsons cite, *Bostick, supra,* 147 Cal.App.4th 80, has nothing at all to do with such a scenario.[7]

A rare decision by this court that did apply an ad hoc fairness exception based on a lawyer's conduct offers a telling contrast. In *Hight v. Hight* (1977) 67 Cal.App.3d 498, a mother sought child support arrearages, and the father raised the preclusive effect of a prior judgment in an action under the former Revised Uniform Reciprocal Enforcement of Support Act of 1968 (RURESA) (Code Civ. Proc., former §§ 1650–1657). The mother, who lived in Colorado, had filed the prior action there, but a Colorado court forwarded it to a district attorney here to prosecute under RURESA. (*Id.* at p. 501.) The father had defended the prior action by claiming the mother had denied him visitation.

---

[7] *Bostick* was a product liability action. (*Bostick, supra,* 147 Cal.App.4th at pp. 83–84.) Gold's Gym, facing joint and several liability for injuries due to a defect in a product manufactured by codefendant Flex Equipment, settled with the plaintiff during trial. The ensuing verdict apportioned 90 percent of the fault to Flex, 10 percent to the plaintiff, and none to "other entities." (*Id.* at p. 84.) The trial court, giving preclusive effect to the finding that Gold's bore no fault, entered judgment on its cross-claim for indemnity from Flex (*Ibid.*) The Second District reversed. (*Id.* at p. 99.) While it recited the principle that issue preclusion may not apply if "considerations of policy or fairness outweigh [its] purposes as applied in a particular case" (*id.* at p. 97), it did not apply an ad hoc fairness analysis. It relied on the propositions that issue preclusion does not apply if the party to be precluded lacked adequate incentive in the prior action to litigate the issue fully, and that it will apply, as between parties who were codefendants in a prior action, only as to issues that "they litigated fully and fairly as adversaries." (*Ibid.*)

(*Ibid.*) The district attorney never sought evidence from her about visitation, and it did not appear she "was even aware that [father] was contesting the action," which the district attorney eventually dismissed. (*Id.* at pp. 504, 501.) In the mother's action, we applied a fairness exception to the preclusion doctrine, emphasizing that she had been only a nominal plaintiff in the prior action, not aware of or able to control how a public official conducted the litigation in her name. (*Id.* at pp. 503–504.) Here, the Thompsons do not suggest that they lacked awareness of or ability to control the *Burlington* litigation, where the issue involved was in fact ultimately considered..

### 2. *The Thompsons cannot rely on "Wrongful Entry" to circumvent the preclusive effects of the Burlington judgment.*

The Thompsons argue in the alternative that the insurers had a duty to defend them under policy provisions covering liability for "personal injury," as distinct from "property damage." They quote an opinion stating, "Unlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence. Rather, it is triggered by one of the offenses listed in the policy." (*General Accident Ins. Co. v. West American Ins. Co.* (1996) 42 Cal.App.4th 95, 103.) But while that was no doubt true of the policy at issue in that case, it is not true of one of the policies at issue here—the Thompsons' policy from Crestbrook.

After defining "bodily injury," "property damage," and "personal injury," the latter of which includes "wrongful entry," the policy states that " 'Occurrence' means an accident, including continuous or repeated exposure to the same general condition. It must result in Bodily Injury, Property Damage or Personal Injury caused by an Insured." The policy thus draws no distinction between the three types of covered harm—bodily injury, property damage, and personal injury—with regard to whether they must arise from an "occurrence," meaning "an accident," to trigger coverage. It makes no

20

difference whether any potential liability to SLT was for "personal injury" in the form of "wrongful entry." To trigger a duty to defend, the potential liability still was required to arise from an "accident." The *Burlington* judgment establishes that it did not.

The other policy here, issued by Nationwide, does distinguish "personal injury" from "property damage" with regard to whether the harm must arise from an "accident" to trigger coverage. But that distinction makes no difference here. The Nationwide policy covers only "wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." As the insurers argue, there was no wrongful entry because the Thompsons had the right to enter the easement parcel and to authorize others to enter. Moreover, even if a "wrongful entry," none of the harm SLT alleged to the undeveloped woodland can possibly be framed as "wrongful entry into . . . a room, dwelling or premises that [SLT] occupies." While the Thompsons cite decisions they describe as equating occupancy to control, those decisions in fact state only that the government's regulatory power over public lands includes a power to control their occupancy—not that control is the same as occupancy. (See, e.g., *Utah Power & Light Co. v. United States* (1917) 243 U.S. 389, 405.)

In any case, the contention that the easement parcel constitutes "a room, dwelling, or premises that a person occupies" fails both because the undeveloped easement parcel is not "a room, dwelling, or premises" and because SLT does not "occup[y]" it. The easement parcel is plainly not a room or dwelling and, contrary to the Thompsons' assumption, it does not qualify as "premises." The Second Appellate District, addressing the same policy provision, concluded that the term "premises," as used in a list with "room"

21

and "dwelling," must be read to mean a place where people live. (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1072 ["Under the principle of ejusdem generis, the general word 'premises' should be defined in the same class or nature of the more specific words that precede it"].)

Nor does SLT "occupy" the easement parcel. To "occupy" is "[t]o hold possession of; to be in actual possession of" or "[t]o live or stay in (a place)." (Black's Law Dict. (11th ed. 2019).) But an easement is "a *nonpossessory* ' "interest in the land of another that gives its owner the right to use the land . . . or to prevent the property owner from using his land." ' " (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 880, italics added.) Federal decisions construing the same policy provision hold that its coverage is triggered only by " 'interference with an enforceable possessory interest in real property and not just an interference with the use or enjoyment of real property.' " (*Camp Richardson Resort, Inc. v. Philadelphia Indemnity Ins. Co.* (E.D. Cal. 2015) 150 F.Supp.3d 1186, 1194 [applying California law], quoting *Evergrow Indus. Co. v. Travelers' Ins. Co.* (9th Cir. 2002) 37 Fed.Appx. 300, 301–302 [same].) While the Thompsons note some unique features of conservation easements, they cite no authority holding that such an easement is possessory in character.

Thus, it is clear that the facts alleged here do not, as a matter of law, come within the scope of the Nationwide policy.

## Disposition

The judgment is affirmed.

                                                                    POLLAK, P. J.

WE CONCUR:

BROWN, J.
NADLER, J.[*]

---

[*] Judge of the Sonoma County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/13/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PETER THOMPSON et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>CRESTBROOK INSURANCE<br>COMPANY et al.,<br><br>      Defendants and Respondents. | A161949<br><br>(Marin County<br>Super. Ct. No. CIV 1904822)<br><br>ORDER GRANTING PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on June 21, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


July 13, 2022                                   POLLAK, P. J.

| | |
|---|---|
| Trial court: | Marin County Superior Court |
| Trial judge: | Honorable Stephen P. Freccero |
| Counsel for plaintiffs and appellants: | NIELSEN KATIBAH LLP<br>James C. Nielsen<br>Daniel N. Katibah<br>Megan W. Wendell |
| Counsel for defendants and respondents: | HINES HAMPTON PELANDA LLP<br>Marc S. Hines<br>Brian Pelanda |