Filed 8/15/23  City of L.A. v. Lance Jay Robbins Paloma Partnership CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LANCE JAY ROBBINS PALOMA PARTNERSHIP et al.,<br><br>Defendants and Respondents. | B324441<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV11588) |

APPEAL from an order of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Hydee Feldstein Soto, City Attorney, Terry Kaufmann Macias, Senior Assistant City Attorney, Amy Brothers and Jennifer Tobkin, Deputy City Attorneys, for Plaintiff and Appellant.

Law Offices of Thomas A. Nitti and Thomas A. Nitti, for Defendants and Respondents.

—————————

The City of Los Angeles (the City or plaintiff) appeals from an order of the trial court dissolving a preliminary injunction which had enjoined Lance Jay Robbins Paloma Partnership (LJRPP), 7th Street Associates, and Lance Jay Robbins (collectively defendants) from using their building known as the Ellison Apartments (the Ellison) as a hotel or for short-term occupancy. The trial court found that the decision in *People v. Venice Suites, LLC* (2021) 71 Cal.App.5th 715 (*Venice Suites*), which held that the Los Angeles Municipal Code does not regulate the length of occupancy in an apartment house and that short-term occupancy was accordingly a permissible use, created a material change in the applicable law.

On appeal the City argues that defendants are precluded from relitigating the issue of whether the Ellison can be used for short-term rentals, because that issue was already decided in a prior proceeding. It also argues that *Venice Suites* is inapplicable. We conclude that the trial court did not err when it found that issue preclusion did not apply or when it determined that *Venice Suites* created a material change in the law, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Prior Writ Proceeding

In January 2018, defendant LJRPP initiated an administrative proceeding with the Los Angeles Department of Building and Safety (LADBS) seeking a "modified" certificate of

2

occupancy or, alternatively, an interpretation of the existing certificate of occupancy that would permit the Ellison[1] to be used as a hotel.  LADBS denied the request, and LJRPP appealed to the City's Zoning Administrator (ZA).  The ZA denied the appeal, and LJRPP appealed that decision to the West Los Angeles Area Planning Commission (APC).  The APC sustained the ZA's denial.

Following the APC's decision, LJRPP filed a petition for writ of administrative mandate directing the City to set aside the APC's decision denying LJRPP's appeal of the ZA and LADBS (the Writ Proceeding).  The City answered, and after a hearing on October 1, 2020, the trial court denied the petition for writ of mandate.  In its written order, the trial court noted that the APC's denial of LJRPP's administrative appeal "was based upon the following findings:  (1) building records show that 'the only recorded use of the subject building since its construction is that of an Apartment House'; (2) the Ellison was constructed as an apartment house per every definition of the term due to the presence of kitchens; (3) there is not recorded evidence of the use of the Ellison as a Hotel; (4) Petitioner does not have a vested right to operate the Ellison with short-term rentals/transient occupancy; (5) the Ellison does not have any nonconforming rights to operate with short-term rentals/transient occupancy; and (6) the Ellison is prohibited from operating as a hotel or for other short term rental (less than 30 days) occupancy in its current RD1.5 zone."  The court found that substantial evidence

---

[1]     The Ellison is a 58-unit apartment building located in the Venice neighborhood of the City of Los Angeles that was built in the early 20th century.

3

supported each of the APC's findings and that the APC had not abused its discretion.

Relevant to this appeal, the trial court found that the APC's finding that short-term rentals were prohibited in the RD1.5 zone was neither error nor an abuse of discretion. The APC found that "the Ellison was re-zoned to RD1.5 in 1973, and that the RD1.5 zone does not allow hotels, motels, or apartment hotels by right." The APC had also determined, based on Planning Department and LADBS guidance, that STRs are not allowed in R-zoned properties. The trial court deferred to the " 'City's interpretation of its own City Code,' " which provided that the RD1.5 zone allowed " 'apartment house[s]' " but not " 'hotel[s]' " and that short-term rentals were not permitted in the RD1.5 zone. The trial court also observed that while LJRPP had cited to a trial court ruling in an unrelated case, *Venice Suites*, which addressed STR "use at an 'apartment house' in the City of Los Angeles," LJRPP had neither asked for a stay while that case was pending appeal nor briefed and developed the arguments made in that case. Accordingly, the trial court rejected LJRPP's argument that the APC had abused its discretion when it found that the RD1.5 zone did not permit hotels or short-term rentals.

LJRPP filed a notice of appeal, but later dismissed the appeal, and the trial court's order became a final judgment.

## II. The Instant Action

While the Writ Proceeding was pending, plaintiff brought the instant action against asserting violations of the Los Angeles Municipal Code (LAMC) and claims of public nuisance.

### A. The Operative Complaint

The operative First Amended Complaint (FAC), filed June 24, 2020, asserted causes of action for Unauthorized Change of

4

Use in violation of LAMC sections 11.00(l) and 12.21.A.1(a), Unauthorized Zone and Land Use Designation in violation of LAMC sections 11.00(l) and 12.21.A1(a), and Public Nuisance in violation of Civil Code sections 3479 and 3480. The FAC alleged that defendants own and operate the Ellison, located in the Venice area of the City of Los Angeles in a low-density residential zone referred to as RD1.5. The FAC further alleged that defendants were using the Ellison as a hotel or renting the apartments as STRs, and that those uses were not authorized in the RD1.5 zone.

### B. The Preliminary Injunction

Plaintiff moved for a preliminary injunction, which the trial court granted after finding that plaintiff had demonstrated a probability of success on the merits for its claims for public nuisance. The court found that plaintiff had submitted evidence that the Ellison was "zoned only for RD1.5 uses and that its use as a short-term stay hotel falls outside its authorized zoning uses." It also found that "Plaintiff submitted evidence that the Ellison Apartments are located in an area designated for low-medium land use, and that hotels are not authorized to operate in areas designated for low to medium land use." The preliminary injunction enjoined defendants from using the Ellison for transient occupancy or for a hotel during the pendency of the case.

### C. The Trial Court Dissolves the Preliminary Injunction

In October 2022 defendants moved to dissolve the preliminary injunction based on a change in the applicable law. Defendants argued that the recent decision in *Venice Suites*, which held that the LAMC did not prohibit short-term occupancy

5

of apartment houses in the R3 Multiple Dwelling zone, was applicable in this case and warranted dissolution of the preliminary injunction.

In its opposition, plaintiff argued that defendants were collaterally estopped from relitigating whether short-term rentals were permitted in apartment houses in the City's RD1.5 Zone based on the trial court's earlier decision in the Writ Proceeding. Plaintiff also asserted that *Venice Suites* was inapplicable because that case involved interpretation of the City's R3 zone, and involved different properties, and different owners. Additionally, plaintiff maintained that *Venice Suites* was inapplicable because in developing the record in that case the People had not presented the court with evidence of the City's interpretation of its zoning code, while such evidence had been introduced in the Writ Proceeding. Plaintiff also made various arguments that *Venice Suites* was incorrectly decided.

The trial court found that *Venice Suites* represented a material change in the law and granted defendants' request to dissolve the preliminary injunction. The court noted that *Venice Suites* had analyzed the issue of whether the LAMC's definition of apartment house contained a length of occupancy requirement and found that it did not. The court found that *Venice Suites* was "plainly applicable to the instant action," observing that both cases involved claimed violations of LAMC section 12.21(A)(1) "arising out of improper uses incompatible with the zone and out of failure to secure proper building permits and Certificate of Occupancy for the alleged use." Additionally, both cases involved the claim that the property owners were improperly operating hotels or short-term rentals. The court determined that "the only notable difference" between the two cases was that *Venice Suites*

6

involved the R3 zone, while the instant case involved the RD1.5 zone. The court stated that the difference was "inapposite because both RD3 zones and RD1.5 zones permit Apartment Housing, which as the Court of Appeal explained in *Venice Suites*, does not have a length of occupancy requirement in the Zoning Code."

The court addressed and rejected plaintiff's collateral estoppel arguments. It found that although the Writ Proceeding met two of the threshold requirements for collateral estoppel, namely a common party and a final judgment, the parties had not sufficiently developed the argument that apartment houses might be interpreted to permit short-term rentals such that the Writ Proceeding involved identical issues that had been actually litigated. The trial court also found that even if the issue had been adequately raised in the Writ Proceeding, *Venice Suites* represented a material change in the law and that collateral estoppel was therefore inapplicable.

Plaintiff timely appealed.

## DISCUSSION

### I. Standards of Review

We generally review the trial court's order granting or denying a motion to dissolve an injunction for abuse of discretion. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.) "However, pure questions of law, such as the interpretation of a statute, are reviewed de novo." (*People ex rel. Feuer v. Progressive Horizon, Inc.* (2016) 248 Cal.App.4th 533, 540.) We also review de novo a trial court's decision to apply collateral estoppel. (See, *e.g.*, *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803.)

7

## II.  Issue Preclusion does not apply

Plaintiff argues that the trial court erred when it dissolved the preliminary injunction because defendants were collaterally estopped from relitigating the issue of whether the Ellison can be used as a hotel or as short-term rentals based on the final judgment in the Writ Proceeding.[2]

Issue preclusion, also referred to as collateral estoppel, prevents a party from relitigating an issue that was finally determined in a prior judicial or quasi-judicial action.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id.* at p. 825.)  "Even if these threshold requirements are satisfied, courts may consider the public policies underlying issue preclusion in determining whether the doctrine should be applied."  (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 686.)

There is no dispute in this case that there was a common party and final judgment in the Writ Proceeding.  Thus, the question raised here is whether the prior proceeding involved an identical issue that was actually litigated and necessarily decided.  "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding."  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)  " 'The

---

[2]  We grant the parties' outstanding requests for judicial notice; however, we disregard all documents not relevant to our disposition of the appeal.  (See *Kilker v. Stillman* (2015) 233 Cal.App.4th 320, 238.)

8

"identical issue" requirement' " is often described as a determination of whether " ' "identical factual allegations" are at stake in the two proceedings.' " (*Id.* at pp. 511–512.)  However, issue preclusion can also apply when a prior proceeding has determined an issue of law.  (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257.)  "An issue decided in a prior proceeding establishes collateral estoppel even if some factual matters or legal theories that could have been presented with respect to that issue were not presented.  [Citations.]  A prior decision does not establish collateral estoppel, however, on issues that could have been raised and decided in the prior proceeding but were not.  [Citations.]" (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042–1043.)

Needless to say, distinguishing issues from factual matters or legal theories "is not always easy."  (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1517.)  The trial court identified the relevant "issue" as whether the Writ Proceeding had litigated the definition of apartment house and whether the definition permitted short-term rentals.  That issue was not briefed or argued, and the trial court in the Writ Proceeding did not address it.

Plaintiff argues, however, that the issue actually litigated in the prior proceeding was whether the Ellison may be used for short-term rentals, which the court in the Writ Proceeding did address and resolve when it determined that "the Ellison is prohibited from operating as a hotel or for other short term rental (less than 30 days) occupancy in its current RD1.5 zone." However, the fact that the same "ultimate issues or dispositions" are at stake does not necessarily mean that the "identical issue"

9

has been presented in both matters.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)  We conclude that the applicable "issue" is whether the LAMC regulates the length of occupancy in an apartment house.  The Writ Proceeding court did not address that issue, and expressly stated that LJRPP had not "provide[d] any meaningful discussion of the legal issues and Zoning Code definitions analyzed by the trial court in Venice Suites LLC."

Perhaps a closer question is whether LJRPP should have raised that issue in the prior proceeding.  "For purposes of issue preclusion . . . an 'issue' includes any legal theory or factual matter which could have been asserted in support of or in opposition to the issue which was litigated."  (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1565–1566.)  As noted, LJRPP referenced the trial court decision in *Venice Suites* in the prior proceeding but did not develop the arguments the parties had made in that case.  That suggests that LJRPP both could have and possibly should have done more to raise and litigate the issue in the Writ Proceeding.  On the other hand, as the Writ Proceeding court stated, Petitioner's original application to the City was not about short-term rentals or an interpretation of apartment houses.  LJRPP's "application to the DBS was specifically to modify the 1967 certificate of occupancy or interpret it to permit 'the Ellison's historic use as a hotel.' "  "Thus one pertinent question for the APC was whether the 1967 C of O properly classified the Ellison as an apartment house, instead of a hotel."

The issues raised and decided in the administrative appeal ultimately included determinations that the Ellison was an "apartment house" not a "hotel," and that the Ellison was not permitted to host short-term rentals because it was in the RD1.5

10

zone.  The determination about whether short-term rentals were a permissible use appears to have been made because throughout the administrative proceedings the LJRPP and the City conflated the concept of "hotel" and "short-term rental."  LJRPP, for its part, would have been satisfied with a result that permitted it to operate as either a hotel or for short-term occupancy, while the City did not want the Ellison used for either purpose.  However, in light of the issue presented in the initial petition regarding the interpretation of the Ellison's certificate of occupancy, we cannot conclude that the issue raised in *Venice Suites* should have been raised in the prior proceeding, or even if it had been whether it would have been "necessarily decided."

## III.  *Venice Suites* applies in this case

In any event, even assuming the threshold requirements for issue preclusion are met, "[issue preclusion] will not be applied where there has been a material change in the law." (*Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 452; see *People v. Strong* (2022) 13 Cal.5th 698, 716 ["one well-settled equitable exception to the general rule holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue"].)

We agree with the trial court that "the holding of *Venice Suites* is plainly applicable to the instant action."  Like this case, *Venice Suites* involved an action brought against a building owner of an apartment house for violation of the LAMC and for public nuisance.  (*Venice Suites*, *supra*, 71 Cal.App.5th at p. 720.)

11

There, the People of the State of California (the People)[3] alleged that Venice Suites illegally operated a hotel or transient occupancy residential structure (TORS) in an apartment house for long term tenants. (*Ibid.*) The People further alleged that the apartment house was located in the R3 Multiple Dwelling residential zone that did not permit short-term occupancy. (*Ibid.*) The trial court granted summary adjudication finding that "the [LAMC] did not prohibit short-term occupancy of apartment houses in an R3 zone." (*Ibid.*)

On appeal, the court "agree[d] with the trial court that the [LAMC] does not regulate the length of occupancy in Apartment Houses in R3 zones." (*Venice Suites*, *supra*, 71 Cal.App.5th at p. 726.) The court looked first to the definition of "apartment house," which the LAMC defines as "[a] residential building designed or used for three or more dwelling units or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms." (*Ibid.*) The court observed that the definition had no length of occupancy requirement and declined to read one into the definition. (*Id.* at p. 730.)

In doing so, the court considered the argument made by the People that "apartment houses" were a subset of TORS, which are defined as " '[a] residential building designed or used for one or more dwelling units  or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms wherein occupancy, by any person . . . is for a period of 30

---

[3] Although *Venice Suites* was brought by the People, the People were represented by the City Attorney's Office, which filed the action and appears on the briefs. (*Venice Suites*, *supra*,71 Cal.App.5th at p. 719.) The City Attorney's Office also represents the City of Los Angeles in this case.

12

consecutive calendar days or less. . . ." (*Venice Suites*, *supra*, 71 Cal.App.5th at p. 729.) The People argued that "a long-term occupancy requirement for an Apartment House may be inferred from the definition limiting TORS to occupancies of 30 days or less." (*Id.* at p. 733.) The court rejected that argument noting that there was "nothing in the record to show the City Council intended to add length of occupancy to the long-established definition of an apartment house when it passed the TORS-related ordinance." (*Ibid.*) The court also rejected the People's argument that short-term occupancy in apartment houses was not allowed under the City's permissive zoning code, which only allowed expressly authorized uses. (*Ibid.*) As the court explained, under the People's theory "no length of occupancy requirement [was] expressed in the definitions for apartment house, apartment hotel, hotel, or residential building." (*Ibid.*) The court reasoned that if the permissive zoning scheme only allowed expressly authorized uses, no occupancy would be permitted in any of those buildings, because none were defined to include a length of occupancy. (*Ibid.*)

Plaintiff argues that *Venice Suites* is both distinguishable and inapplicable in this case. The primary distinction plaintiff draws between the building in *Venice Suites* and the Ellison is that Venice Suites is zoned for R3 use, while the Ellison is zoned RD1.5. The RD1.5 zone is more restrictive than the R3 zone, but both zones are residential and allow apartment houses. The definition of apartment house, "[a] residential building designed or used for one or more dwelling units or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms" is the same in the R3 and RD1.5 zone. Although plaintiff argues that the cases are distinguishable because of the

13

different zoning, it does not explain why *Venice Suites'* analysis of apartment houses in the R3 zone would not apply to the same term in the RD1.5 zone.

Instead, plaintiff contends that *Venice Suites* is inapplicable because the People did not make the same arguments or present the same evidence in *Venice Suites* as the City did in the Writ Proceeding. Plaintiff reasons that the holding in *Venice Suites* is accordingly inapposite because a case is not authority for propositions that it did not consider.

Of course, "[i]n every case, it is necessary to read the language of an opinion in light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301 (*Fireman's Fund Ins. Co.*); see *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["Language used in any opinion is . . . to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered"]; see *People v. Rusconi* (2015) 236 Cal.App.4th 273, 280.) However, the fact that different or better arguments might have been presented in the *Venice Suites* case does not make it inapplicable or non-binding in other cases. *Venice Suites* is precedent for the statements of law that were "necessary to the decision" of that case regardless of what plaintiff thinks of the arguments presented there. (*Fireman's Fund Ins. Co.*, at p. 1301.)

Nor are we persuaded, as plaintiff contends, that "*Venice Suites' own language* contemplated an alternative conclusion if the *evidence* of the City's intent and interpretation of the TORS

14

enactment had been offered." Plaintiff points to two statements in *Venice Suites* in support of this argument. First, the court wrote that: "For purposes of this opinion, we conclude we need not rely on the City's interpretations of the Los Angeles Municipal Code." (*Venice Suites*, *supra*, 71 Cal.App.5th at p. 723, fn. 3.) Second, it stated that "There is nothing in the record to show the City Council intended to add a length of occupancy to the long-established definition of an apartment house when it passed the TORS-related ordinance." (*Id*. at p. 733.) Taken in context, we do not read these statements in *Venice Suites* as an invitation for an alternative analysis if presented with different evidence. The *Venice Suites* court was plainly aware that "a city's interpretation of an ambiguous portion of its own code 'is entitled to deference.' " (*Id*. at p. 723, fn. 3.) Its decision to proceed without the city's interpretation indicates that it did not consider the appliable code provisions ambiguous.

We also reject plaintiff's argument that *Venice Suites* put misplaced reliance on *Edwards v. City of Los Angeles* (1941) 48 Cal.App.2d 62, 69, and *Euclid v. Ambler Realty Co.* (1926) 272 U.S. 365, in determining the definition of apartment house. *Venice Suites* made only passing references to *Edwards* and *Euclid* in response to arguments made by the People urging the court to look to "dictionary definitions and federal caselaw" to determine whether "apartment house is restricted to long-term occupancy." (*Venice Suites*, *supra*, 71 Cal.App.5th at p. 731.) The *Venice Suites* opinion made clear that its conclusion that apartment house does not have a minimum length of occupancy was based on the LAMC definition of apartment house and the rule that the "court's function 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert

15

what has been omitted, or to omit what has been inserted. . . . [Citations.]" (*Ibid.*)[4]

---

[4] In light of our conclusion, we need not address defendants' arguments that this appeal is moot or that collateral estoppel bars plaintiff from arguing that short-term rentals are not permitted in an apartment house except to note that the general rule that "issues raised for the first time on appeal which were not litigated in the trial court are [forfeited]." (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897.)

## DISPOSITION

The trial court's order dissolving the preliminary injunction is affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HEIDEL, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17